#### OF THE

# TERRITORY OF ARIZONA

## DURING THE YEAR 1907.

[Civil No. 892.   Filed March 22, 1907.]

[89 Pac. 593.]

## HENRY EWING, HOWARD H. WATKINS and JOHN S. KOLAR, Defendants and Appellants, v. UNITED STATES OF AMERICA, Plaintiff and Appellee.

1. OFFICERS — BONDS — ACTION — JOINDER OF CAUSES — ACT OF CONG. MARCH 2, 1895, CHAP. 177, SEC. 5, 28 STAT. 807, CONSTRUED.—An action by the United States government may be maintained upon an official bond to government uniting in one count an action for the breach of an original and a renewal bond of an officer under the act of Congress, *supra*, requiring the renewal of official bonds every four years, and declaring that the liability of the principal and sureties on official bonds shall continue and cover the service ensuing until the appointment of the successor of the principal; the action being based on a delinquency arising after the execution of the renewal bond which is merely cumulative security.

2. SAME—SAME—SAME—COMPLAINT—SUFFICIENCY—ACT OF CONG. JULY 4, 1884, CHAP. 180, SEC. 8, 23 STAT. 97 (1 REV. STATS. SUPP. 450), CITED.—A complaint upon a bond set forth that said bond provided that defendant would honestly account, without fraud or delay, for the public·moneys and public funds that should come into his hands and for all funds received by him by reason of his official position; and then alleged that defendant was on a certain date indebted to the plaintiff in a certain sum of public money in his hands as such officer, and that plaintiff had demanded from him and his codefendants, and each of them, the payment of said sum but they had neglected and refused to pay the same or any part thereof. *Held*, in the action of the breach of such a bond conditioned on an accounting for public funds and not presenting a complaint of the character mentioned in act of Congress, *supra*, relating to the presentation of the account containing material representa-

XI Ariz.—1

tions, that the complaint sufficiently alleged wherein the government suffered damage and a breach of the bond.

3. OFFICERS — BOND — ACTION — EVIDENCE — BURDEN OF PROOF — REV. STATS. U. S., SEC. 886 (U. S. COMP. STATS. 1901, P. 640), CONSTRUED. In an action upon an official bond for the alleged failure of the principal to honestly account for and promptly and faithfully pay over public money alleged in the complaint to have been in his hands on a certain date, the only burden of proof upon the plaintiff was to establish by the preponderance of the evidence that there were such funds in his hands for the amount charged on the date given, and that he had failed or refused to pay them over to the government, which fact may be established by the certified transcript of his account with the United States as shown by the books of the Treasury Department, which the plaintiff had placed in evidence and which is by section 886, *supra*, made legal evidence authorizing a. judgment.

4. TRIAL—INSTRUCTIONS—TERMS—ACT OF CONG. JULY 4, 1884, CHAP. 180, SEC. 8, 23 STAT. 97 (1 REV. STATS. SUPP. 450).—In an action by the United States government on the bond of a disbursing agent. conditioned on his accounting for public funds in his hands and on his not presenting any fraudulent claim within act of Congress, *supra*, where the government established the amount due the government from the agent by showing that a voucher for a specified amount had been credited to him, and then recharged against him on a finding that it was of the fraudulent character mentioned in the statutes, *supra*, an instruction that the government must establish that there was a material misrepresentation as to the amount due and paid on the voucher was properly refused as not within the issues; the defendants having alleged in their answer that the voucher was "of the character mentioned in section 8."

5. SAME—SAME—SAME.—It was not error for the court to refuse to instruct that if the disbursing agent faithfully paid a voucher recharged against him, and that at the time of payment it was due because the payer had completed a contract, the verdict should be for the defendants, inasmuch as it directed the jury to determine the case on an issue not involved.

6. OFFICERS—BONDS—LIABILITY—ACT OF CONG. JULY 4, 1884, CHAP. 180, SEC. 8, 23 STAT. 97 (1 REV. STATS. SUPP. 450), CITED.—Where a. disbursing officer, having executed to the government a bond conditioned upon his account, for the public funds coming into his hands, and on his not presenting a fraudulent claim within section 8, *supra*, presented a voucher payable to a third person for a specified sum which was paid, and then, without authority from the government, received for himself a specified part of the money paid on the voucher, though he certified to the government that he had paid the third person the full amount. *Held*, that the fact that the agent thereafter used the sum received from the third person for the benefit.

of the government did not relieve him from liability on his official bond.

7. TRIAL—VERDICT—DIRECTION—WHEN AUTHORIZED.—The court is not authorized to instruct a verdict for the plaintiff if there has been any evidence presented which would sustain a verdict in favor of the defendant; but unless there has been such evidence and the court would be constrained on motion to set aside a verdict for defendant after rendition, then the court is authorized to direct a verdict for the plaintiff.

8. OFFICERS—BOND—LIABILITY—ACT OF CONG. JULY 4, 1884, CHAP. 180, SEC. 8, 23 STAT. 97 (1 REV. STATS. SUPP. 450).—In an action on the bond of a disbursing agent conditioned on his accounting for the public funds coming into his hands and on his not presenting any fraudulent claims within section 8, *supra,* a showing by the government that the balance due from him was occasioned in part by the presentation of a voucher for which the agent had once been credited, and such credit afterward disallowed and the amount recharged on finding that it was within section 8, *supra.* The defendants having admitted in their answers that the agent had presented for payment a claim of the character mentioned in said section 8, *supra,* but that the claim did not contain any material misrepresentation in regard to the amount due or paid, is sufficient to authorize a judgment for the government.

9. SAME—SAME—SAME—SAME.—Where, in an action by the government on the bond of a disbursing agent conditioned on his accounting for the public funds coming into his hands, and on his not presenting any fraudulent voucher within section 8, *supra,* the agent testified that he had paid a specified sum to a third person, who immediately paid back a part thereof to be held as security that the third person would perform certain work, and the agent had certified that the work had been completed, when, as a matter of fact, it had not, *held,* such certificate to the government was a material misrepresentation authorizing a recovery.

APPEAL from a judgment of the District Court of the Fourth Judicial District, in and for the County of Mohave. Richard E. Sloan, Judge. Affirmed.

On July 6, 1896, Henry P. Ewing entered the service of the United States as industrial teacher for the Hualapai Indian Schools in Mohave county, Arizona, and was on the ninth day of July, 1896, appointed special disbursing agent by the Secretary of the Interior of the United States. On July 18, 1896, the said Ewing, as principal, and William H. Lake, Howard H. Watkins, and John S. Kolar, as sureties, executed and delivered to the United States the official bond of said

Ewing, as such industrial teacher and special disbursing agent, in the sum of $5,000, and on the first day of August, 1900, the said Ewing, as principal, and the above mentioned Watkins and Kolar, as sureties, gave a renewal bond to the United States in the penal sum of $5,000, as security for the proper performance of his duties by said Ewing, as said industrial teacher and special disbursing agent. The provisions in said bonds were identical, and provided that: "The said principal shall at all times, during his holding and remaining in said office, carefully discharge the duties thereof, and faithfully disburse the public moneys, and honestly account, without fraud or delay, for the same, and all public funds including funds designated in the regulations of the Indian Department as miscellaneous receipts, and moneys belonging to Indians under his charge which shall or may come into his hands, and all other funds received by him by reason of his position as industrial teacher and special disbursing agent, and for all public property placed in his charge, and the said principal shall not knowingly present, or cause to be presented, any voucher, account or claim of the character mentioned in section 8 of the act of Congress of July 4, 1884: 23 U. S. Stats., p. 97, c. 180; 1 Rev. Stats. Supp., p. 450."

Ewing, after taking the proper oath of office, entered upon the discharge of his duties as such government official, and continued in such service until the year 1901. On the twenty-eighth day of March, 1903, the appellee herein brought suit against the appellants under the provisions of both of the bonds above described, and alleged in its complaint that Ewing had broken the conditions of said bonds, in this, that on the thirty-first day of December, 1900, there was in his possession, "as such industrial teacher and special disbursing agent, the sum of $1,094.59, public moneys of the United States which he did not then and there honestly account for, and has not at any time honestly accounted for, or paid to or for said plaintiff, in that he, as such industrial teacher and special disbursing agent, did knowingly present and cause to be presented to the accounting officers of the United States, for approval and payment, a certain voucher, account, and claim, of the character mentioned in section 8 of the act of Congress of July 4, 1884, which contained a material misrepresentation of fact in regard to the amount due and paid, to wit, a voucher, account, or claim, for credit for a

payment alleged to have been made to James M. Russell, for furnishing labor and material upon and constructing an. irrigation plant for use in the Indian service, which contained the representation that $1,260 was due and paid therefor, which representation in fact was not true.   Upon the disallowance of the credit claimed, in which said voucher, account and claim, and the full settlement of his accounts with the United States, by accounting officers thereof, on December 31, 1900, he was found to be indebted, and is indebted to plaintiff in the sum of $1,094.59, public moneys of the United States, in his hands as such officer''—whereby the conditions of the obligations of the aforesaid bonds were claimed to have been broken.   The plaintiff then alleged demand upon the said defendants, and each of them, for payment of said sum, and their neglect and refusal to pay the same, and the damage thereby to the plaintiff in said sum, and asked   judgment therefor.

The answers of the several defendants were by way of demurrer to the complaint and general denial, and, as a separate defense, they alleged that Ewing had kept and performed the conditions of the obligations set forth in the complaint, and denied that there was, on December 31, 1900, in said Ewing's possession, as industrial teacher and special disbursing agent, any public moneys of the United States, which said Ewing had not then and there honestly accounted for.   And, further answering, they alleged that while Ewing ''was industrial teacher and special disbursing agent, as set forth in the complaint, he presented to the accounting officers of the United States, for approval and payment, a certain voucher, account and claim of the character mentioned in section 8 of the act of Congress of July 4, 1884, but that said voucher did not contain a, or any material, misrepresentation in regard to the amount due or paid as alleged; that the voucher, account and claim was presented for credit for payment made by defendant Ewing, in his official capacity, to one James M. Russell, for furnishing labor and materials and constructing an irrigating plant for use in the Indian service, in the sum of $1,260; that said amount was due and paid therefor; and that said amount was paid to said James M. Russell.''

The issues, as presented by these pleadings, were dismissed as to William H. Lake, and were on the fifth day of July, 1904, tried before a court and jury, against the other de-

fendants. At the conclusion of the plaintiff's evidence, the defendants moved the court to direct a verdict in their favor upon the ground that, the breach of the bond sued upon depending upon material misrepresentation by the defendant Ewing, it was incumbent upon the government, in order to be entitled to a verdict in its favor, to sustain by evidence the allegation of material misrepresentation, which it had in this case failed to do. The motion was denied by the court, and the defendants introduced their evidence, at the conclusion of which the defendants asked for certain instructions, which were refused, and, on motion of the United States attorney, the court directed a verdict for the plaintiff in the amount sued for, with interest, and, upon the verdict of the jury, judgment was entered against the defendants in that amount. From the judgment and the denial of the motion for a new trial, the defendants have appealed to this court.

Robert E. Morrison, for Appellants.

The whole question turned upon whether or not Ewing in the Russell voucher made any material misrepresentation of fact. Plaintiff should have been required to prove material misrepresentation, if there were any, and if no such material misrepresentation was shown, the government had no right to recharge the voucher and no balance could have been claimed against Ewing. The treasury transcript shall be complete evidence as to accounts between the government and its disbursing officer. Findings by the officials of the Postoffice Department, that certain commissions were illegally claimed and that certain property was illegally retained, did not justify a judgment against defendant. *United States* v. *Case,* 49 Fed. 270, and cases cited. The burden of proof is upon the plaintiff to show the amount of its loss. *United States* v. *Young,* 44 Fed. 169. The court should have instructed the jury as to what, in law, constitutes a material misrepresentation. *New* v. *Potts,* 55 Ga. 420. Where material questions of fact are presented by the testimony, it is proper to refuse to direct a verdict. *Jackson* v. *Pittsburg A. T. Co.,* 159 Pa. 399, 28 Atl. 257. Where it is entitled to go to the jury upon any theory arising out of the fact, it is error to direct the verdict for the plaintiff. *Kuhl* v. *Meyer,* 42 Mo. App. 474.

Frederick S. Nave, United States Attorney, and John H. Campbell, Assistant United States Attorney, for Appellee.

"The court did not err in directing the verdict for the plaintiff." It was the duty of the court to scrutinize the uncontradicted testimony and determine whether or not a material misrepresentation had in fact been made. If material misrepresentation had been made, it was his duty to direct the verdict, which in fact he directed.

DOAN, J.—The appellants have presented several assignments of error, but their entire case is substantially covered by the first, second, third, and fourth assignments. The first error assigned is the overruling of the demurrer to the complaint, upon the ground that there are two causes of action united in the one count, in that it is based upon the breach of two separate bonds; the one bond dated July 18, 1896, and the other dated August 1, 1900. The first bond was executed on the appointment of the defendant Ewing, and, under the provisions of the government for the renewal of bonds every four years (Act March 2, 1895, c. 177, sec. 5, 28 Stat. 807), the second was given, as a renewal bond, at the expiration of four years. This act, however, which provides that official bonds shall be renewed every four years after their dates, further provides that the liabilities of the principal and sureties on all official bonds shall continue, and cover the period of service ensuing until the appointment and qualification of the successor of the principal. In this instance, the renewal bond was given because the term of service of Ewing, the principal, extended more than four years without the appointment of any successor to him in the said office. The delinquency upon which this suit was brought arose in the account during the period after the execution of the renewal bond; the renewal bond, however, being, under the statute, a mere renewal of the original bond of the officer, and cumulative in its effect, it was proper that both instruments should be set forth in the pleading. 27 Am. & Eng. Ency. of Law, 2d ed., 537. The other grounds on which the demurrer was based are not tenable. It was alleged that the complaint "failed to show wherein the plaintiff had suffered any damage," and that the complaint "failed to allege facts showing a breach of the bond." It is a sufficient answer to these

to say that the bond provided that the defendant Ewing would honestly account, without fraud or delay, for the public moneys and public funds that should come into his hands, and for all funds received by him by reason of his position as industrial teacher and special disbursing agent, and then alleged that he was on December 31, 1900, indebted to the plaintiff in the sum of $1,094.59, public moneys in his hands as such officer, and that the plaintiff had demanded from him and his co-defendants, and each of them, the payment of said sum, but they had neglected and refused to pay the same or any part thereof.

It is next alleged that the court erred in refusing to instruct the jury to return a verdict in favor of the defendants at the close of the plaintiff's case, on the ground that there was no evidence showing a material misrepresentation of fact in the Russell voucher. We do not understand that it was incumbent upon the government to establish by the evidence in this case that the defendant Ewing had made any material misrepresentations of fact, in regard to the Russell voucher. This suit was brought for the alleged failure of the defendant Ewing to honestly account for, and promptly and faithfully pay over, the public money alleged in the complaint to have been in his hands on December 31, 1900, as such officer. The only burden of proof upon the plaintiff was to establish, by a preponderance of the evidence, that there were public funds in Ewing's hands in the amount charged, on the date given, and that he had failed or refused to pay them over to the government. This fact was established by the certified transcript of his account with the United States, as shown by the books of the Treasury Department, which the plaintiff had placed in evidence, and which is, by section 886 of the United States Revised Statutes (U. S. Comp. Stats. 1901, p. 670), made legal evidence authorizing a judgment. *United States* v. *Drachman,* 5 Ariz. 13, 43 Pac. 222; *United States* v. *Ellis,* 2 Ariz. 253, 14 Pac. 300. At the time the motion to instruct for the defendants was made, the fact of the delinquency in the amount stated was practically conceded, because there had been no evidence on the part of the defendants offered to offset or contradict the testimony of the plaintiff. The plaintiff had, therefore, at this time, made a *prima facie* case, and the motion of the defendants was properly denied.

The counsel for the appellants has proceeded upon the theory that it was necessary for the government, in order to recover in this case, to establish by a preponderance of the evidence that the defendant Ewing made material misrepresentations of fact to the government in relation to the $1,260 warrant. No such burden is placed upon the government in this case, although that theory would have been correct if the case had been based upon alleged misrepresentations of fact in regard to the $1,260 warrant; in other words, the government could, at the time the $1,260 warrant was disallowed, have alleged that, as a breach of the bond, the issuable fact would then have been the misrepresentations of fact and the materiality of such misrepresentations. But the government did not do so. That is not this suit. Instead of so doing, the government availed itself of the privilege given it in said section 8, "if any such credit shall be given or received or payment made, the United States may recharge the same to the officer or person receiving the credit or payment," and recharged that amount to Ewing in the account, and then allowed its account with Ewing to continue until the close of the year, when he was called upon to settle for the balance in his hands as then appeared on the face of the account, and, on failure to do so, the government brought this suit because of the breach of the condition in the bond, which provides that the said Ewing should "faithfully disburse the public moneys and honestly account, without fraud or delay, for the same . . . and all other funds received by him by reason of his position as industrial teacher and special disbursing agent." In the suit brought upon the alleged violation of this condition of the bond, it was only incumbent upon the government to establish, as above stated, the amount of the balance in his hands. In fairness to the defendant Ewing, it was proper that the government should further state, by way of bill of particulars, the several items of that account which caused it to show such balance at that time, and it was therefore shown that the amount of the balance at that time was occasioned by, among other things, the disallowance of the $1,260 claim, and its having been recharged by the accounting officers of the department, against the defendant Ewing, as "a voucher or account of the character mentioned in section 8," etc. It was only, therefore, incumbent upon the government to establish by the evidence the fact

that this account had been "recharged as a voucher or account of the character mentioned in section 8." This it had done, and not only was the evidence in support of that not disputed, but the defendants had all of them alleged, in their answers, that this was "a voucher, account, and claim of the character mentioned in section 8," which allegation on their part rendered unnecessary any evidence of the character of that voucher on the part of the government. Had the defendants, instead of admitting and pleading that this voucher was "of the character mentioned in section 8," denied that fact, and traversed the pleadings of the government, we do not say that they could not have pleaded facts that would have supported evidence to put in issue before this jury the character and materiality of the misrepresentations alleged in reference to the $1,260 voucher; but that would have been another case, and, as they have not done so, we are not called upon to determine in this case what might have been the issues of that one.

The refusal by the judge of the lower court to give three several instructions, requested by the defendants at the close of their evidence, is next assigned as error. In the first instruction, after referring to the balance found due the government upon the auditing of its account with the defendant Ewing, and showing that such balance arose from the refusal of the accounting auditors to approve the voucher for $1,260, and the consequent recharging of that amount against Ewing by the said accounting officers upon their finding that it contained material misrepresentations, defendant asked the court to charge the jury:

"I charge you that the plaintiff, the United States, must establish to your satisfaction, by a preponderance of the evidence, that there was a material misrepresentation of fact in regard to the amount due and paid on said voucher."

"Instruction 2: You are instructed that if you believe from the evidence in this case that the defendant Ewing, as the principal in the bonds sued upon, honestly and faithfully paid the said Russell the sum of $1,260 for furnishing labor and material upon and constructing the irrigating plant heretofore mentioned, and that, at the time of the payment to said Russell of said sum, it was due by reason of the fact that said Russell had completed his contract according to the

plans and specifications prepared for the erection of said irrigating plant, then you should find for the defendant.''

"Instruction 3: You are further instructed, though you may believe from the evidence in this case that the defendant Ewing received from said Russell $150 out of the $1,260 payment, and that said Ewing thereafter used said $150 for the benefit of the United States and in and about and on account of said irrigating plant, doing things which were not called for by Russell's contract and the plans and specifications relating to said irrigating plant, nevertheless, if you believe, from the evidence in this case, that said Russell received the said $1,260, the contract price for the construction of said irrigating plant, and did receive said sum of money from said Ewing, then your verdict should be for the defendants.''

The first instruction was properly refused, because it did not correctly place before the jury the issues presented in the case; there being no requirement on the part of the United States to establish by a preponderance of the evidence that there was a material misrepresentation of fact. In order to recover, it was only necessary for the United States to establish that the balance named in the complaint was due and unaccounted for, and had not been paid to the United States. The defendants had not set up in their pleadings, nor established by their evidence, sufficient facts to place before the jury, as an issue, the materiality or immateriality of the misrepresentations in regard to the $1,260 voucher. It was only incumbent upon the United States to establish the amount of the balance due the government from the defendant Ewing on December 31, 1900, and as a means of establishing the amount of such balance, to show that the voucher for $1,260 that had been credited to Ewing had been recharged against Ewing, upon the finding of the auditing officers that it was "of the character mentioned in section 8, of the act of July 4, 1884, and contained material misrepresentations of fact,'' that had been done. The next instruction directed the jury to find for the defendants, if they believed from the evidence in the case that Ewing honestly and faithfully paid to Russell the $1,260, and that, at the time of the payment to Russell, the said sum was due by reason of the fact that Russell had completed his contract according to plans and specifications. The vice of this instruction lay, not only in authorizing the

jury to find a verdict on their belief relative to one feature of the case that would be insufficient of itself to authorize a verdict without taking into consideration other features that might modify or control it, but that it directed the jury that they could determine the case on an issue that was not raised in the pleadings nor presented to them in this case. The third instruction was equivalent to directing the jury that they could find a verdict for the defendants, although they might be satisfied from the evidence that Ewing received from Russell $150 out of the $1,260 payment, if Ewing thereafter used that $150 for the benefit of the United States in and about the irrigating plant, doing things which were not called for by Russell's contract and the plans and specifications. This instruction, in the words used, without any limit as to the time when, or the circumstances under which, Ewing might have thus used that $150, might be equivalent to charging the jury that if they found that Ewing, without any authority from, and without the knowledge of, the United States, received for himself from Russell $150 of the money that he certified to the government he had paid Russell, and for which amount he had drawn the check, the misrepresentation to the government relative to this payment would be condoned, and need not be considered by them, if, after he had been detected in the transaction, he, in order to save himself from civil action or criminal prosecution, had expended this much money on something relating to the irrigating plant, of which the government received the benefit, even though he expended it doing things which were not called for by Russell's contract, or the plans and specifications relating to the said plant. The instructions were properly refused by the court, and their offer can only be accounted for on the ground that the defendants were endeavoring to try this case upon the theory that it was necessary to establish fraud, or conversion of this amount of money, by the defendant Ewing, in order to enable the government to recover.

It is next assigned that the court erred in directing a verdict for the plaintiff, on the ground "that the question of material misrepresentation is one of fact to be submitted to the jury." This calls upon us to consider whether there was any evidence in the case that was entitled to go to the jury.

The court was not authorized to instruct a verdict for the
plaintiff, if there had been any evidence presented that, taken
with all its legal intendments, would sustain a verdict in
favor of the defendants.   On the other hand, unless there
had been such evidence, the court would be constrained on
motion to set aside such verdict after rendition, and there-
fore would be justified, on motion, in directing a verdict.
*Delaware L. & W. R. Co.* v. *Converse,* 139 U. S. 469, 11 Sup.
Ct. 569, 35 L. Ed. 213; *Haupt* v. *Maricopa Co.,* 8 Ariz. 102,
68 Pac. 525; *Haff* v. *Adams,* 6 Ariz. 395, 59 Pac. 111.   The
United States had made a *prima facie* case as to the balance
due on account and the nonpayment thereof.   The defendants
adduced no evidence to disprove either such balance or non-
payment.   The only point left to be considered is to what·
extent the allegations and evidence relative to the $1,260
account entered into the case and affected the $1,094.59 bal-
ance, or the evidence establishing that balance.   The com-
plaint alleged that the condition of the account showing the
balance was occasioned in part by the presentation of a
voucher or account for $1,260, for which defendant Ewing
had once been credited, and, on investigation, such credit
had afterward been disallowed, and the amount recharged
to him on the finding of the auditing officers that the voucher
or account was one "of the character mentioned in section
8. . . ."   This section provides: "That any disbursing or
other officer of the United States, or other person who shall
knowingly present, or cause to be presented, any voucher, ac-
count or claim to any officer of the United States, for ap-
proval or payment, or for the purpose of securing a credit
in any account with the United States, relating to any mat-
ter pertaining to the Indian service, which shall contain any
material misrepresentation of fact in regard to the amount
due or paid, the name or character of the article furnished
or received, or of the service rendered, or to the date of
purchase, delivery or performance of service, or in any other
particular, shall not be entitled to payment or credit for any
part of said voucher, account or claim; and if such credit
shall be given or received, or payment made, the United
States may recharge the same to the officer or person receiv-
ing the credit or payment, and recover the amount from
either or from both, in the same manner as other debts due

the United States are collected." The defendants, in their answers, have specially pleaded that Ewing, "while he was industrial teacher and special disbursing agent, as set forth in the complaint, presented to the accounting officers of the United States, for approval and payment, a certain voucher, account and claim of the character mentioned in section 8 of the act of Congress of July 4, 1884, but that said voucher, account and claim did not contain a, or any material, misrepresentation in regard to the amount due or paid as alleged; that the voucher, account and claim was presented for credit for payment made by defendant Ewing in his official capacity, as described in the complaint to one James M. Russell, for furnishing labor and materials upon and constructing an irrigating plant for use in the Indian service, for the sum of $1,260; that said amount was due and paid therefor; and that said amount was paid to James M. Russell." "As section 8 only refers to vouchers or accounts which shall contain any material misrepresentation of fact in regard to the amount due or paid, . . . or in any other particular," and then states that "any disbursing officer" presenting the same "shall not be entitled to payment or credit for any part of said voucher, account or claim," and provides that, "if any such credit shall be given or received or payment made, the United States may recharge the same to the officer or person receiving the credit or payment," it is immaterial in this case as to what other particular it may have been in which the material misrepresentation of fact was made, because the answers have joined with the complaint, and have directly alleged that the defendant Ewing did present such an account, and have identified this account as the one thus presented, and only allege that "it did not contain any material misrepresentation in regard to the amount due or paid as alleged," without stating that it did not contain any material misrepresentation in any other particular, and, if it did not contain any material misrepresentation in regard to the amount due or paid, it must have contained a material misrepresentation in regard to some other particular in order to have been "a voucher, account, or claim of the character mentioned in section 8." Therefore, the answers joining with the complaint in designating the $1,260 voucher as "of the character mentioned in section 8," and section 8 authoriz-

ing the government to "recharge such an account if credited," left the amount of the balance due as alleged uncontroverted, and fully justified the court in directing the verdict.

Even without this plain interpretation of the pleading that definitely disposes of the case, if we consider the evidence offered as having been offered in support of the denial of the fact that the $1,260 voucher was of the character mentioned in section 8, we find nothing that would call for the submission of this case to the jury. Whether or not the defendant Ewing had made restitution to the government is not material in this case, while it might be in a case for conversion or embezzlement. He testified that he paid the $1,260 to Russell and that Russell immediately paid him back $150, which he testified he held as security that Russell would go back to the agency and do other work. He corroborates this by the testimony of Morrison, who states that he saw the check drawn, and saw Ewing and Russell start toward the bank, and that it was an agreement, at the time the check was drawn, that Russell would give back to Ewing, besides the money to be repaid the Indians, $150. Ewing, in the voucher, certified to the department that the work was fully completed according to the contract, as the ground for paying such voucher. If the work was not completed, and he had a right to withhold $150 to insure its completion, his certificate to the government that it was fully completed was a material misrepresentation of fact. If the work was completed according to contract, and his certificate to the department was true, then his own testimony, supported by that of his witness, that he only drew the check for $1,260, and paid it to Russell, on the agreement that they should go together to the bank, and that Russell should pay him back $150, in addition to the amount for the payment of the Indians, rendered his certificate that he had paid $1,260, a material misrepresentation of fact, because, if the work was completed according to specifications, as he certified, this payment to Russell, instead of being $1,260, as certified and as the check would indicate, was in fact only $1,110, so that, even in this view of the case, the evidence on the part of the defendant sustains, instead of controverts, the finding of the accounting officers, and does not tend to disprove the amount

due the government on December 31, 1900, as was alleged in the complaint and supported by the plaintiff's evidence.

The judgment of the lower court is affirmed.

KENT, C. J., concurs.

SLOAN, J., having tried the case in the court below, and CAMPBELL and NAVE, JJ., having been of counsel, took no part in the determination of this case.