[Civil No. 777.   Filed March 19, 1902.]

[68 Pac. 525.]

## H. HAUPT, Plaintiff and Appellant, v. MARICOPA COUNTY, Defendant and Appellee.

1. TRIAL—VERDICT—DUTY OF COURT TO DIRECT FOR DEFENDANT—ROOT v. FAY, 5 ARIZ. 19, 43 PAC. 527; ROBERTS v. SMITH, 5 ARIZ. 368, 52 PAC. 1120, APPROVED.—Where the evidence for the plaintiff, taken as true, and in its strongest light against the defendant, presents no case upon which the plaintiff is entitled to recover, the court may instruct the jury to return a verdict for the defendant.

2. COUNTIES — LOCAL SUBDIVISIONS OF TERRITORY FOR GOVERNMENTAL PURPOSES—DUTIES—LIABILITIES.—A county is the local subdivision of a state or territory created by the state for the purposes of government, its functions, political and administrative, having direct relation to the policy of the state. It is possessed of only such powers as the state chooses to give it, can incur no liability except in pursuance of law, and cannot be made to respond for wrongs committed by its officers or agents unless the statute so declares.

3. COUNTIES—BOARD OF SUPERVISORS—POWER—SANITARY REGULATIONS —CONTAGION—DESTRUCTION OF PROPERTY TO PREVENT SPREADING— COMPENSATION TO OWNER OF PROPERTY DESTROYED — CONTRACT — REV. STATS. ARIZ. 1887, PARS. 381, 383, 397, SECS. 19, 25, CON-STRUED.—Paragraph 381, *supra*, provides that "every county is a body politic and corporate, and as such has the power specified in this act and such powers as are necessarily implied from those expressed." Paragraph 383, *supra*, declares that these powers "can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law." Para-graph 397, *supra*, empowers the board (Sec. 19) to adopt "such provisions for the preservation of the health of their respective counties as they may deem necessary, and provide for the expenses thereof," . . . (Sec. 25) "to make and enforce all such local, police, sanitary, and other regulations as are not in conflict with general laws." Under these statutes a county is liable for a house, and the goods therein, taken by order of the board of supervisors and destroyed under an agreement by the board to reimburse the owner, such action being deemed necessary after consultation with a physician to prevent the spread of a contagious disease.

APPEAL from a judgment of the District Court of the Third Judicial District in and for the County of Maricopa. Webster Street, Judge.   Reversed.

The facts are stated in the opinion.

Millay & Christy, for Appellant.

A municipal corporation may contract through its agents. *City of McPherson* v. *Nichols,* 48 Kan. 430, 29 Pac. 679; *Beers* v. *Dalles City,* 16 Or. 334, 18 Pac. 835; *Carleton* v. *City* of *Washington,* 38 Kan. 726, 17 Pac. 656; *Ward* v. *Town of Forest Grove,* 20 Or. 355, 25 Pac. 1020.

The power to contract through an agent carries also the power to ratify a contract made by one claiming to be an agent. *Town of Durango* v. *Pennington,* 8 Colo. 257, 7 Pac. 14; *City of Ellsworth* v. *Rossite,* 46 Kan. 237, 26 Pac. 674.

A. J. Edwards, and Oliver P. Morton, for Appellee.

A public servant appointed for a particular purpose cannot bind a county in contract when such contract is clearly without the apparent scope of his authority. Any one contracting with a public official, agent, or servant is bound to know whether such party has the authority to contract and the scope of that authority. *Packard* v. *Voltz,* 94 Iowa, 277, 58 Am. St. Rep. 396, 62 N. W. 757; *Coffee County* v. *Venard,* 10 Kan. 95; *Smith* v. *Carlton County,* 46 Fed. 340; *Sherbourne* v. *Yuba County,* 21 Cal. 113, 81 Am. Dec. 151; *Ruffman* v. *San Joaquin County,* 21 Cal. 427.

For cases holding that contracts of counties are *ultra vires* and void when made under circumstances similar to the case at bar, see *People* v. *Cazneau,* 20 Cal. 503; *People* v. *Pico,* 20 Cal. 595; *Miller* v. *Board of Commissioners,* 4 Idaho, 44, 35 Pac. 712; *Morrell* v. *Douglass,* 14 Kan. 293; *Noble* v. *Cain,* 22 Kan. 493; *Wallace* v. *Mayor of San Jose,* 29 Cal. 188.

DAVIS, J.—On the thirteenth day of October, 1900, the justice of the peace and the constable of Gila Bend, in Maricopa County, telegraphed to the board of supervisors of said county stating that there were a number of cases of diphtheria at Gila Bend, that there was no doctor there, that the parties were unable to send for a doctor, and requesting the board to send a doctor at once. The board sent Dr. Woodruff to Gila Bend, with instructions to do whatever he thought right and proper to eradicate and prevent the spread of the disease. Dr. Woodruff left Phœnix Saturday evening, Oc-

tober 13th, returned Saturday morning, October 20th, and reported to the board on Monday, October 22d, that there had been several very marked cases of diphtheria at Gila Bend, one death while he was there, and one since he left; also stated that he had left orders with the justice of the peace and constable as to whom to quarantine and length of time to quarantine; advised that the county furnish a tent and bedding to sick family, and, as soon as the quarantine is lifted from them, to move them into the tent and burn their house, which is a small affair. The board, after discussion of the matter, adopted the suggestions and recommendations of the doctor, and instructed him to write to the officers in charge what to do in the matter. On October 27, 1900, Dr. Woodruff returned to Gila Bend, moved the family into the tent provided by the county, and, after stating that the appellant herein would be reimbursed by the county for all property destroyed, set fire to and burned the house which had been occupied by the sick family, and all the furniture, household effects, stores, and personal property therein contained. On November 3, 1900, the appellant presented to the board of supervisors of Maricopa County an itemized claim against said county for $988.08 for the property so destroyed, duly verified as required by the statute, and on November 17, 1900, at a regular meeting of the board, the claim of the appellant was taken up, and, after hearing the evidence of the appellant and Dr. Woodruff, the quarantine doctor mentioned above, and after fully discussing the matter, the board decided to allow the appellant the sum of $400, and directed the clerk to notify the appellant officially of the award. The clerk of the board sent to the appellant written notice, under the seal of the county, of the award, whereupon he filed, in the district court, this suit against the county for the full amount of the claim. The case was tried to a jury, and, after the plaintiff's evidence was in, counsel for defendant moved for an instruction to the jury to return a verdict for the defendant. For the purpose of this motion, the value of the property was admitted to be as claimed. After argument by the respective counsel, the motion was granted. The jury was so instructed by the court, and thereupon returned a verdict for the defendant, and judgment followed on the verdict. The foregoing is an agreed statement of the facts

in the case for the purposes of the plaintiff's appeal to this court, the evidence at large not being preserved in the record.

Did the court err in directing a verdict for the defendant? It is now well settled in this territory that, where the evidence for the plaintiff, taken as true and in its strongest light against the defendant, presents no case upon which the plaintiff is entitled to recover, the court may instruct the jury to return a verdict for the defendant. *Root* v. *Fay,* 5 Ariz. 19, 43 Pac. 527; *Roberts* v. *Smith,* 5 Ariz. 368, 52 Pac. 1120; *Haff* v. *Adams,* 6 Ariz. 395, 59 Pac. 111. We have therefore to determine whether, under the agreed facts, regarded in their most favorable light for the appellant, a case is presented upon which, as a matter of law, a recovery could be had against the county in its corporate capacity for the destruction of his property. A county is the local subdivision of a state or territory. It is created by the state for the purposes of government. Its functions, political and administrative, have direct relation to the policy of the state. It is possessed of only such powers as the state chooses to give it. It can incur no liability except in pursuance of law. It cannot be made to respond for wrongs committed by its officers or agents unless the statute so declares. The provisions of our territorial law which bear upon the case at bar are to be found under title 13 ("Counties") of the Revised Statutes of 1887. Paragraph 381 provides that "every county is a body politic and corporate, and as such has the power specified in this act, and such powers as are necessarily implied from those expressed." By paragraph 383 it is declared that these powers "can only be exercised by the board of supervisors, or by agents and officers acting under their authority, or authority of law." It is provided by paragraph 397 that "the board of supervisors, in their respective counties, have jurisdiction and power, under such limitations and restrictions as are prescribed by law, . . . (19) to adopt such provisions for the preservation of the health of their respective counties as they may deem necessary, and to provide for the expenses thereof. . . . (25) to make and enforce all such local, police, sanitary, and other regulations as are *not in conflict with general laws.*" With the exception of the further expressed authority to provide for the care and maintenance of the indigent sick, and to erect hospitals there-

for, the two foregoing provisions represent the power of the county in relation to the public health.

The action in this case was based upon contract, it being alleged ''that the said property was taken and destroyed by the defendant to prevent the spread of a contagious disease, and the said defendant then and there promised the plaintiff to pay him the full value thereof.'' The question of the liability of counties for torts, discussed to some extent in the briefs, is not one with which we have to deal. Nor does the case, as we view it, necessarily involve a consideration of the principles which relate to the exercise of the right of eminent domain. It is the theory of the appellant, 1. That the board of supervisors had power under the law, acting for the preservation of the public health, to contract with him for the taking and destruction of his property, and for his reimbursement to the extent of the actual value thereof; 2. That Dr. Woodruff, as the authorized representative of the board, contracted, on behalf of the county, to pay for the said property, and thereupon destroyed the same; and 3. That the board ratified the contract and recognized the county's liability thereunder. Counsel for the appellee strenuously dispute the proposition that the board of supervisors could, under the law, bind the county to a contract of this nature, and insist that such an agreement, if entered into by the board, would be *ultra vires* and void. It is pointed out that a public corporation always possesses the common-law power to abate a nuisance, without liability, even to the destruction of the thing constituting it, and that it is expressly admitted by the complaint in this case ''that the said property was taken and destroyed . . . to prevent the spread of a contagious disease.'' It is not a question here of whether liability could have been avoided by the adoption of a different course of action, but rather, one as to whether, under the law and the procedure taken, an obligation has been created against the county. In addition to the enforcement of suitable police and sanitary regulations, the supervisors are empowered ''to adopt such provisions for the preservation of the health of their respective counties as they may deem necessary, and to provide for the expenses thereof.'' The language used indicates a broad grant of power, and that it was intended to intrust to the board a large discretion concerning the means

to be employed for the preservation of the public health. It would not be the part of wisdom to unduly hamper with restrictions the exercise of so important a function. The prevalence of contagion may require the adoption of different measures, according to the peculiar exigencies of the situation which is presented, and we do not feel justified in prescribing a limitation which might, in effect, tie the hands of the board when the urgency was the greatest. In the case before us, the property destroyed consisted of the house which had been occupied by the sick family, admittedly a "small affair," and its contents of furniture, household effects, stores, and personalty. We are of the opinion, considering the circumstances of this case, that the board of supervisors possessed the requisite power, under the foregoing grant, to contract with the appellant to pay him for the taking and destruction of his property, as the most efficient means for the eradication of the disease with which it was infected. Having such power, we think it is apparent, from the admitted facts, that the evidence of the plaintiff on the trial fairly tended to prove that the board exercised its authority by entering into an agreement to reimburse him for the property which it was about to destroy for the protection of the public health. The question of the sufficiency of the evidence to establish such contract was one which should properly have been left to the jury. We think, therefore, the court erred in peremptorily instructing the jury to return a verdict in favor of the defendant. The judgment of the district court is reversed, and the cause remanded for a new trial.

Sloan, J., and Doan, J., concur.