219 P.2d 769

**BOARD OF SUP'RS OF MARICOPA COUNTY et al. v. STANFORD.**

No. 5297.

Supreme Court of Arizona.

June 23, 1950.

Snell, Wilmer, Walsh, Melczer & Beauchamp, of Phoenix, for appellants.

F. Britton Burns, of Phoenix, for appellee.

DE CONCINI, Justice.

On or about September 15, 1949, William E. Stanford, Maricopa County Assessor, appellee herein, presented to the County Board of Supervisors a payroll claim in the sum of $1,689.50 and a claim for the payment of four cash registers in the sum of $8,680.20. The Board of Supervisors, hereinafter called the supervisors, refused to authorize payment of the above claim upon the ground and for the reason that sufficient funds were not present in the special fund set apart for the operation of the License Plate Department of the County Assessor's office.

Appellee, William E. Stanford, hereinafter called the assessor, petitioned the trial court for a writ of mandamus against the supervisors compelling them to pay the above-mentioned claims. The trial court granted the writ as to the payroll claim but refused to order the payment of the claim for the four cash registers. The supervisors appeal from the order making the writ peremptory.

The facts and issues involved in this appeal are complicated and numerous and the best method of proceeding herein is to set out a brief history of the surrounding facts and circumstances leading up to the problem. The assessor maintains two offices in Phoenix. One office is located in the Maricopa County Court House. The other office, being known as the Automobile License Plate Department, the one with which we are here concerned is located at 1205 West Madison Street in Phoenix.

Each employee of the Auto Department is hired by the assessor with the approval of the County Board of Supervisors and is paid in the same manner as are the other county employees. These employees perform dual duties prescribed by statute. One set of duties is the registration of motor vehicles and the collection of registration fees and license plate fees. The other set of duties is concerned with the assessment and collection of the "lieu" tax imposed by constitutional amendment and by statute. As a practical matter these functions are intermingled and carried out almost simultaneously.

We deem it advisable to set out the particular statutes involved. The portion of the statute governing the collection of registration and license fees is section 66-201(f), A.C.A.1939, passed in 1937. "The assessor of each county is constituted an agent of the division for the performance of acts and duties delegated to him, and the offices maintained by such county assessors are constituted county offices of the division. Fifty cents (50¢) of each original registration fee shall be remitted to the county treasurer of the county in which such registration fee is collected, and placed

in a special fund for the use of the assessor in carrying out the duties imposed upon him by this act. Claims against said fund shall be allowed and paid in the same manner as claims against the county are allowed and paid. The board of supervisors may order the transfer of all or any unexpended part of said fund received during a previous fiscal year into the fund for the maintenance and construction of county highways. All moneys received from the taxes herein imposed, except the portion retained for the assessor's special fund, shall be immediately transferred by the collecting officer to the superintendent, and by him to the state treasurer, who shall credit the same to the state highway fund."

In 1940, article 9, section 11 of the Arizona Constitution was amended in part to read as follows: "* * * Beginning January 1, 1941, a license tax is hereby imposed on vehicles registered for operation upon the highways in Arizona, which license tax shall be in lieu of all ad valorem property taxes on any vehicle subject to such license tax. Such license tax shall be collected annually by the registering officer at the time of application for and before registration of the vehicle each year and shall be (a) at a rate equal to the average ad valorem rate for all purposes in the several taxing districts of the state for the preceding year, but in no event to exceed a rate of four dollars on each one hundred dollars in value, and (b) during the first calendar year of the life of the vehicle up-

on a value equal to sixty per cent of the manufacturer's list price of such vehicle, and during each succeeding calendar year upon a value twenty-five per cent less than the value for the preceding calendar year." The tax provided for in the above amendment supersedes all other ad valorem tax on motor vehicles and is commonly known and will be hereafter referred to as the "lieu" tax.

Section 66-901, A.C.A.1939, passed by the legislature in 1941 to implement article 9, section 11 of the Constitution, supra, provided for the distribution of the "lieu" taxes as follows: In a county containing no incorporated towns, 25% to the state general fund, 37½% to the county general fund, 37½% to the Board of Supervisors for the benefit of certain school districts. In a county containing one or more incorporated towns, 25% to state general fund, 25% to county, 25% to Board of Supervisors as above set out, 25% to the incorporated cities and towns in proportion to their population if there is more than one.

The License Plate Department has been operated as a unit separate and apart from the regular operation of the County Assessor's office in Maricopa County for years. It has been supported solely out of revenues derived from the collection of the registration fees. Under section 66-201(f), supra, 50 cents of each registration fee is for the use of the county assessor in carrying out the duties imposed upon him by that act. Laws 1937, Reg.Sess. Ch. 67. Up-

to the date of bringing this action the 50-cent fee has been sufficient to pay the entire expense of the License Plate Department, including collection and distribution of "lieu" tax. From time to time the assessor would remit enough funds to the County Treasurer to pay for the operation of the department. The treasurer would segregate these receipts in a special fund for use in honoring the warrants issued on behalf of the License Plate Department.

In the 1949-1950 budget adopted by the supervisors $270,920 was budgeted for the assessor's office. This sum was broken down as follows: $205,920 for the expenses of the assessor proper, which was further itemized to wit, salaries, supplies, etc.; $65,000 for the license plate department. This last item was a lump sum anticipated expenditure, and a like sum of $65,000 was estimated as revenue from the operation of the department. The supervisors admit the foregoing, but deny that the $65,000 item was legally budgeted.

■ The evidence on the trial of this case showed that the County Assessor deposited the county's share of each registration fee (to wit, 50 cents), in a separate and private bank account. This practice is contrary to law and such conduct by the assessor must cease because section 66-201(f), supra, clearly and unequivocally provides as follows: " * * * Fifty cents (50¢) of each original registration fee shall be remitted to the county treasurer of the county in which such registration fee is collected, * * * ". Under this provision the assessor must immediately turn such revenue over to the county treasurer. The fund created by these 50-cent registration fees will hereafter be referred to as the "special fund."

One of the important issues raised herein is whether the special fund set up in section 66-201(f) supra, derived from the county's 50-cent share of the original registration fee was legitimately used to pay the proportionate share of the License Plate Department's expenses for the collection of the "lieu" tax?

■ Prior to and at the time of the enactment of section 66-201, supra, it was the duty of the county assessor to collect the ad valorem tax on registered motor vehicles as well as the registration fees. The assessor collected both taxes simultaneously as an integrated charge in that he performed two duties, (a) the collection of the registration fee and (b) the collection or the assessment of the ad valorem taxes on registered motor vehicles. The legislature was aware of that situation and presumably acted with that in view. Therefore it is reasonable to conclude that the legislature had in mind that the county should use its share of the registration fee to defray the expense of the assessor's office in collecting all the fees and taxes in connection with registering and issuing licenses for motor vehicles, because the duties were inseparable.

The passage of the "lieu" tax provisions placed no new duties on the assessor, but merely outlined the method and scope of his actions and limited the rate of assessment in the collection of the "lieu" tax in place of the ad valorem tax. Therefore the assessor could, with the approval of the supervisors, use all of the special fund to defray the costs of operating his license plate department, if necessary.

■■■■ The next question is, in the event there is not sufficient money in the special fund to defray the costs of the license plate department for issuing registration certificates, plates and collecting the license fee and "lieu" tax, who is responsible to provide the additional funds, the state or the county? The supervisors contend that section 66-201(f), supra, makes the assessor and his employees in the license plate department agents of the state and therefore the expense of the department is an obligation of the state. We cannot agree with this. Section 66-201(f) merely imposes certain duties upon the assessor, not altogether different from collecting ad valorem taxes, but does not set up state offices or agencies separate and apart from the assessor's other duties. State v. Glass, Tex. Civ.App., 167 S.W.2d 296. In this case the legislature and the constitution delegated to the counties, the duty of collecting the "lieu" tax and the county must fulfill its obligation. The reason for this being that the county is a political subdivision of the state existing and created to aid in the administration of the state's laws and for purposes of self government. Hunt v. Mohave County, 18 Ariz. 480, 162 P. 600; Hartford Accident & Indemnity Co. v. Wainscott, 41 Ariz. 439, 19 P.2d 328. A further reason is that the county as well as other political subdivisions in the county benefit from the imposition of the "lieu" taxing measure.

Neither said sections 66-201 or 66-901, supra, nor article 9, section 11 of the Constitution, supra, impose any duty on the state to pay the collection expenses of the "lieu" tax. Therefore, it being the duty of the county to collect both the registration fees and the "lieu" taxes, it is the duty of the supervisors to budget properly for the operation of the assessor's office in order that the assessor may have adequate personnel in collecting said fees and "lieu" taxes. In this case the supervisors legally budgeted for both departments of the assessor's office.

■■■■ The supervisors also claim that no provision was made in the county budget as required by the provisions of sections 73-502, 73-503 and 73-504, A.C.A. 1939, for the requirements of this department. Their position is that where a certain lump sum amount is budgeted to a certain department without the amount being segregated into the particular expenses of the department, the result would be an unsuccessful attempt to comply with our above-cited statutes. In this case the county budget contained a reference to the li-

cense plate department which provided for an estimated gross expenditure of $65,-000. This figure was not broken down into the various smaller items of expense, such as salaries, supplies, etc. We have held that a lump sum appropriation to the head of a department by the county is sufficient. There need be no breakdown of expenses in order to comply with our statutory provisions therefor. Coleman v. Lee, 58 Ariz. 506, 121 P.2d 433; State Board of Health v. Frohmiller, 42 Ariz. 231, 23 P.2d 941. In view of the foregoing the supervisors are legally bound to see to it that these wage claims are paid within the limit of the budget.

The evidence in this case proved there was a budgetary balance for the assessor's office for the period in question with which to pay the assessor's employees. The assessor's special fund created by the 50-cent fees was not sufficient to meet those expenses at that time, but the budget anticipated an amount as income from the collection of said registration fees which would equal the assessor's expenditures for that department. This estimate of expense and income was based on many years experience in budgeting for that department. Under the circumstances the Board of Supervisors were bound to honor the assessor's payroll claim.

Judgment affirmed.

LA PRADE, C. J., and UDALL, STANFORD and PHELPS, JJ., concur.