632 F.2d 855
 YANKEE ATOMIC ELECTRIC COMPANY, Maine Yankee Atomic Power
Company, Public Service Company of New Hampshire,
and Vermont Yankee Nuclear Power
Corporation, Plaintiffs-Appellees,
v.
NEW MEXICO AND ARIZONA LAND COMPANY, Defendant-Appellant.
 No. 79-1203.
 United States Court of Appeals,
Tenth Circuit.
 Argued July 9, 1980.
Decided Sept. 29, 1980.
Rehearing Denied Nov. 24, 1980.
 
 William C. Schaab of Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M. (Ropes & Gray, Boston, Mass., of counsel), for plaintiffs-appellees.
 John R. Rawling, Phoenix, Ariz. (John J. O'Connor, III, Phoenix, Ariz., with him on brief) of Fennemore, Craig, von Ammon & Udall, Phoenix, Ariz. (Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., of counsel), for defendant-appellant.
 Before BARRETT, DOYLE and McKAY, Circuit Judges.
 BARRETT, Circuit Judge.
 
 
 1
 New Mexico and Arizona Land Company (Land Company) appeals from an adverse declaratory judgment and order entered in favor of Yankee Atomic Electric Company, Maine Yankee Atomic Power Company, Public Service Company of New Hampshire, and Vermont Yankee Nuclear Power Corporation (Utilities). A brief summary of the facts, which are not in dispute, will facilitate our review.
 
 
 2
 Utilities are all utility companies who contracted separately with Land Company in 1975 for the purchase of uranium concentrates from ore owned by Land Company in New Mexico. The contracts were the culmination of several months of protracted negotiations, during the course of which each party was represented by counsel. The four contracts, considered in the aggregate, provide for the sale of 800,000 pounds of uranium concentrates for a total price of $22,900,000.00.
 
 
 3
 The contracts were substantially the same and each contained a Paragraph 10 which provided, inter alia :
 
 
 4
 All taxes, including but not limited to ad valorem taxes, imposed on the Concentrates on the U 3O 8 in them shall be Seller's sole responsibility and paid by it so long as title to the Concentrates remains in Seller. Any taxes imposed on the Concentrates or the U 3O 8 after title to the Concentrates passes to Buyer shall be Buyer's sole responsibility and paid by it. Any sales, excise, transaction privilege or other similar tax . . . imposed by any governmental entity as a result of the sale of the property being sold hereunder shall be paid by Buyer after Seller notifies Buyer that any such tax has become due. (Emphasis supplied).
 
 
 5
 This action arose when Land Company and Utilities disagreed over which party would pay certain New Mexico taxes, i. e., New Mexico's Resources Excise Tax, §§ 7-25-1 et seq. N.M.S.A.1978; New Mexico's Severance Tax, §§ 7-26-1 et seq. N.M.S.A.1978; and New Mexico's Oil and Gas Severance Tax §§ 7-30-1 et seq. N.M.S.A.1978.
 
 
 6
 In entering its judgment for Utilities the trial court held, inter alia : the taxes operate as excise taxes, but the contract requires their payment by Land Company; the taxes are imposed on the act or privilege of severing; under the terms of the contracts (Paragraph 10) Land Company "can pass on to the plaintiffs (Utilities) only taxes imposed 'as a result of the sale of the property' "; the severance and resources taxes are imposed as a result of severance regardless of sale; the Oil and Gas Conservation Tax, in spite of its language "severed and sold" is first prompted by severance, and is an excise tax like the others; sale of the ore and title passes at the time the ore is delivered in Baltimore; transportation is the "taxable event" and it occurs when title is in Land Company; these are not the type of taxes the contracts allow to be passed on to Utilities; and "The taxes not having been incurred 'as a result of the sale of the property', but as a result of the severance of the uranium bearing materials from New Mexico land at a time when title existed exclusively in the defendant (Land Company), the taxes cannot be passed from the defendant to the plaintiff (Utilities)."
 
 
 7
 On appeal, Land Company contends: (1) Paragraph 10 of the respective contracts allocates the economic burden of the Severance, Resources, and Conservation taxes to Utilities; and (2) the trial court failed to allocate the tax burdens in accordance with the manifest intent of the parties. Inherent within these contentions is the underlying issue of whether the trial court properly determined that the taxes in question are imposed as a result of severance, regardless of sale. Because of the dispositive nature of this underlying issue, we elect to discuss it next.
 
 
 8
 As set forth, supra, the trial court ruled that the taxes involved herein are all excise taxes which are imposed on the act or privilege of severing, regardless of sale. In reviewing the propriety thereof we must, of necessity, review the statutory language of each tax individually. The Court in Andrus v. Allard, 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979), pertinently observed:
 
 
 9
 Our point of departure in statutory analysis is the language of the enactment. See Southeastern Community College v. Davis, 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979). "Though we may not end with the words in construing a disputed statute, one certainly begins there." F. Frankfurter, Some Reflections on the Reading of Statutes 16 (1943). At p. 56, 100 S.Ct. at p. 322.
 
 
 10
 See also : Lewis v. United States, 445 U.S. 55, at p. 60, 100 S.Ct. 915, at p. 918, 63 L.Ed.2d 198 (1980).
 
 
 11
 Section 9 of New Mexico's Resources Excise Tax provides:
 
 
 12
 The taxes imposed by the Resources Excise Tax Act . . . are to be paid on or before the twenty-fifth day of the month following the month in which the first of the following occurs: Sale, transportation out of New Mexico or consumption. § 7-25-9 N.M.S.A.1978.
 
 
 13
 Section 7 of New Mexico's Severance Tax Act provides, inter alia :
 
 
 14
 A. The severance tax on uranium is measured by . . . . The taxable event is the sale, transportation out of New Mexico or consumption . . . whichever first occurs. § 7-26-7 N.M.S.A.1978.
 
 
 15
 Section 4 of New Mexico's Oil and Gas Conservation Tax Act provides, inter alia :
 
 
 16
 A. There is levied and shall be collected by the oil and gas accounting commission a tax on all products which are severed and sold. § 7-30-4 N.M.S.A.1978.
 
 
 17
 The words of these statutes are to be interpreted in their ordinary definitions and in the meanings commonly attributed to them. Jones v. Liberty Glass Company, 322 U.S. 524, 68 S.Ct. 229, 92 L.Ed. 142 (1947); Glover Construction Company v. Andrus, 591 F.2d 554 (10th Cir. 1979), aff'd --- U.S. ----, 100 S.Ct. 1905, 64 L.Ed.2d 548 (1980). In so doing, it is clear that the taxable event on the uranium ore herein under New Mexico's Resource Tax and its Severance Tax follows its "sale, transportation out of New Mexico or consumption". Similarly, the taxable event under New Mexico's Oil and Gas Conservation Act occurs when the product is "severed and sold". Under each Act, severance, in and of itself, does not give rise to a taxable event; however, under each Act, severance, coupled with the "sale, (sold) transportation out of New Mexico, or consumption" triggers the imposition of the tax.[1] Accordingly, we hold that the Court erred in finding/concluding that the taxes herein were predicated solely on the privilege of severance, regardless of sale.
 
 
 18
 Having determined that the taxes herein are predicated upon the privilege of severance and the sale, transportation out of New Mexico or consumption of the ore mined, we must now determine whether the Court correctly construed Paragraph 10 of the respective contracts, whereby the parties agreed upon the allocation of taxes.
 
 
 19
 In interpreting Paragraph 10, it is fundamental that courts cannot change or alter contract language for the benefit of one party and to the detriment of another party. Williams Petroleum Company v. Midland Cooperatives Incorporated, 539 F.2d 694 (10th Cir. 1976). Every contract must be interpreted according to its own terms, Security Mutual Casualty Company v. Century Casualty Company, 531 F.2d 974 (10th Cir. 1976), and construed to effectuate the manifest intent of the parties. Quad Construction, Inc. v. Wm. A. Smith Contracting Co., Inc., 534 F.2d 1391 (10th Cir. 1976). The courts of New Mexico have consistently considered and construed contracts as a whole, Schaefer v. Hinkle, 93 N.M. 129, 597 P.2d 314 (1979), and considered a contractual provision which is clear and unambiguous as conclusive. Rushing v. Lovelace Bataan Health Program, 93 N.M. 168, 598 P.2d 211 (1979).
 
 
 20
 Applying these standards and guidelines to Paragraph 10 herein, we must hold that the Court erred in ruling that Land Company was liable for the mineral taxes assessed on the uranium ore mined.
 
 
 21
 As noted, supra, Paragraph 10 allocated the payment of taxes in three distinct ways: a. Sellers to pay all taxes as long as title remained with them; b. Buyers to pay all taxes imposed on the uranium after title thereto passed to Buyers; and c. Buyers to pay all taxes imposed "as a result of the sale of the property being sold". Inasmuch as Buyers, Utilities, are obligated to pay all taxes imposed as a result of "the sale of the property being sold", and in light of our determination that all three taxes are predicated upon the severance and sale of the uranium ore, we hold that Utilities, under the provision of Paragraph 10 contained in each of the executed contracts with Land Company, is obligated to pay the New Mexico taxes at issue herein.[2]
 
 
 22
 Reversed and remanded for further proceedings consistent herewith.
 
 
 23
 WILLIAM E. DOYLE, Circuit Judge, dissenting.
 
 
 24
 I respectfully dissent.
 
 
 25
 The majority has reversed the judgment of the trial court. The entire design of the system of tax laws in dispute is the imposition of a severance tax and not a sales tax. The New Mexico and Arizona Land Company should pay the tax.
 
 
 26
 The facts are limited, but they disclose that the Utilities, the Plaintiffs-Appellees, contracted to purchase uranium from the New Mexico and Arizona Land Company. A dispute arose between the contracting parties as to which party was to pay the New Mexico taxes. An action was filed and a declaratory judgment was entered in favor of the Yankee Atomic Electric Company, Maine Yankee Atomic Power Company, Public Service Company of New Hampshire and Vermont Yankee Nuclear Power Corporation, here called the "Utilities". The New Mexico and Arizona Land Company is the Appellant here.
 
 
 27
 There is no great dispute about the contract and its provisions. The parties have agreed in that contract that the seller, the Land Company, would pay all taxes imposed on uranium as long as title remained with the Land Company. Utilities, the buyers, have agreed to pay all taxes on the uranium after the title passed to the buyers. Also, the buyers agreed to pay all taxes imposed "as the result of the sale of the property being sold." The majority has concluded that the taxes were imposed as the result of the sale of the property and for that reason the Utilities are liable. This is the point of departure. To solve this problem we must consider the excise tax, the severance tax and the oil and gas severance tax. If we conclude that the tax is a severance tax and not a sales tax, Plaintiffs-Appellees will prevail.
 
 
 28
 I. Discussion of the New Mexico Excise Tax, a Companion of
 
 
 29
 the Severance Tax
 
 
 30
 Section 7-25-2, N.M.S.A.1978 provides that the purpose of the Resources Excise Tax is to "provide revenue for public purposes by levying a tax on the privilege of severing and processing natural resources within New Mexico." The implication from this is that the tax is to be imposed upon the severance and processing of the uranium, and that only. No mention of sale is made. And equally important is that this section does not suggest that a sale is essential to the imposition of the tax.
 
 
 31
 Section 7-25-9 provides that the taxes are due on or before the 25th day of the month following the month that one of three events occur: sale, transportation out of New Mexico, or consumption. This is not, however, because of the sale or because of the transportation, etc. that the tax becomes due and payable.
 
 
 32
 In fixing taxable value it is necessary to look to Section 7-25-3(I), N.M.S.A.1979, which states that taxable value is that which exists after severing or processing, without deduction, of any natural resources severed or processed in New Mexico. The statute continues that in the absence of other value, the taxable value means the total amount of money or the reasonable value of the consideration received for the severed or processed natural resource, and further provides that if the severed or processed material is not sold, the taxable value is the reasonable value of the severed or processed natural resource.
 
 
 33
 Thus, the section just referred to above provides that a tax is to be imposed even if the severed or processed natural resource is not sold. Reading Section 7-25-1, et seq. in its entirety, it becomes apparent that the tax is to be imposed solely upon the severance of the natural resource from the land. The tax is not imposed "as the result of the sale of the property being sold." That is merely the occasion as well as the measure. Therefore, under the contract, if the tax arose while the Land Company held title to the property, the Land Company is responsible for paying the excise tax.
 
 II. Discussion of the Severance Tax
 
 34
 We turn now to consider the severance tax, Section 7-26-1, et seq. N.M.S.A.1978. Section 10 of that chapter provides that "the purpose of this Act is to impose a unified system of severance taxes upon the severance of energy resources in the form of oil, gas, coal and uranium." The reasonable implication from reading the face of the Act is that the severance tax is to be imposed upon the process of severing the uranium from the land. Section 7-26-7, supra, provides that the taxable event is the sale, transportation out of New Mexico, or the consumption of the uranium bearing material, whichever occurs first. This section, when read in connection with Section 7-26-8, supra, which provides that "the severance tax is to be paid on or before the 25th day of the month following the month in which the taxable event occurs", leads to the conclusion that the tax is being imposed upon severance of the uranium from the land and is due on or before the 25th day of the month following the month in which either sale, transportation out of New Mexico or consumption occurs. Thus, the severance tax sections are to be read together and interpreted as providing that the tax is being imposed upon severance of the uranium from the land, that it is due on or before the 25th day of the month following the month during which either sale, transportation out of New Mexico or consumption occurs. It is further to be concluded that this statute is interpreted in the same manner as the excise tax. It cannot reasonably be interpreted to mean that a tax was to be imposed upon the sale of the uranium, as this directly contradicts the entire purpose of the tax, which purpose is to impose a unified system of severance taxes on the severance of natural resources in New Mexico. To treat it as a sales tax would completely ignore the fact that the taxable event may be either the sale, transportation out of New Mexico or consumption of the uranium. None of this detracts from the predominant conclusion that the tax arises at the time of severance, and becomes due or ripens upon the happening of one of the three taxable events. That being so, the Land Company is liable for paying the severance tax, as well as the excise tax, if title remained in the Land Company at the time of severance of the uranium from the land.
 
 
 35
 III. Comparison of the Oil and Gas Severance Tax
 
 
 36
 Section 7-30-3, the oil and gas severance tax, 1978, states that the purpose of this Oil and Gas Conservation Tax Act is to provide "efficient administration and collection of a conservation tax on oil, natural gas, and liquid hydrocarbons." Section 7-30-4(A), N.M.S.A.1978, provides that "there is levied and shall be collected by the Oil and Gas Act Accounting Commission a tax on all products which are severed and sold."
 
 
 37
 Although the tax on uranium is not levied and collected until severance and sale of the uranium, nevertheless the sale must be preceded by severance; no tax is imposed solely upon sale of the uranium. It is true that the parties have agreed that any excise or similar tax imposed as the result of the property being sold is to be paid by the Utilities. However, the tax in question is not imposed as the result of the sale of the uranium. It is imposed if the uranium is first severed and is then sold. The fact that the uranium is sold does not change the character of the tax from a severance tax to a sales tax. When one reads the three statutes, that is, the excise tax, the severance tax and the oil and gas severance tax, together, it becomes apparent that the oil and gas severance tax is also levied upon severance and becomes due upon sale. It would be stretching the language of the statute to hold that a tax which may not be imposed upon the sale alone is imposed upon sale of the property. It is clear, therefore, that if the title to the uranium remained in the Land Company at the time of severance from the land, the Land Company would be liable for the oil and gas severance tax.
 
 
 38
 For these reasons, it is my conclusion that the majority opinion is wrong. The tax in question is a severance tax and the New Mexico and Arizona Land Company is liable for that tax, in accordance with the District Court's ruling. I would affirm the judgment of the District Court.
 
 
 
 [1]
 Our conclusion is, we believe, bolstered by the general language contained in § 7-26-4(A) N.M.S.A.1978: "Unless otherwise provided in this section, the 'taxable event' is the severance of a natural resource whose taxable value is determined under Subsections B, C, D and E of this section;" when contrasted with the specific language dealing with severance of uranium found in § 7-26-7 N.M.S.A.1978. See supra. Where there exist two statutes dealing with the same subject matter, the two should be harmonized, if possible; if there exists a conflict between their provisions, the statute dealing with subject in a more detailed manner will prevail, unless intended otherwise by the Legislature. Glover Const. Co. v. Andrus, supra
 
 
 [2]
 The language employed in all the relevant New Mexico statutes is distinctly different than the unqualified language found, for example, in the Wyoming Severance Tax statute that the excise tax levied is based on ". . . the value of the gross product extracted upon the privilege of severing or extracting uranium . . ." § 39-6-302(a), W.S.1977