934 P.2d 796

**ARIZONA DEPARTMENT OF REVENUE, an agency of the State of Arizona, Plaintiff–Appellant, Cross–Appellee,**

v.

**ARIZONA PUBLIC SERVICE COMPANY, an Arizona corporation, Defendant–Appellee, Cross–Appellant.**

**No. 1 CA–TX 96–0009.**

Court of Appeals of Arizona,
Division 1, Department T.

March 18, 1997.

Grant Woods, Attorney General by James M. Susa, Special Assistant Attorney General, Phoenix, for Plaintiff–Appellant, Cross–Appellee.

Walker Ellsworth, P.L.C. by Marlan C. Walker, Frank L. Migray and Robert E. Ciancola, Gretchen S. Thierstein, Phoenix, for Defendant–Appellee, Cross–Appellant.

## OPINION

GERBER, Judge.

The Arizona Department of Revenue (DOR) assessed use taxes against Arizona Public Service (APS) on its purchases of coal from a mine in McKinley County, New Mexico. APS claimed Arizona credit for its payment of McKinley County gross receipts taxes, New Mexico resources excise taxes, and New Mexico severance taxes. The Arizona State Board of Tax Appeals (Board) ruled that APS deserved credit for McKinley County gross receipts taxes but not for the New Mexico resources excise and severance taxes.

APS and DOR challenged the Board's ruling. The tax court affirmed the Board's ruling. DOR now appeals and APS cross-appeals. We must determine the following issues:

1. Whether a gross receipts tax imposed by a county ordinance in another state constitutes an excise tax created "under the laws of" the sister state within Arizona Revised Statutes (A.R.S.) section 42–1409(A)(2); and

2. Whether the resources excise and severance taxes imposed by New Mexico statute constitute excises on the "sale or use" of tangible personal property within A.R.S. section 42–1409(A)(2).

## FACTS AND PROCEDURAL HISTORY

APS is a public utility that generates and distributes electric power predominantly in Arizona. APS bought and transported coal from a mine in McKinley County, New Mexico owned by the Pittsburgh & Midway Coal Company (Midway). These purchases generated tax liabilities in New Mexico and in McKinley County. Midway paid the gross receipts taxes on the coal and passed those taxes onto APS as a combined percentage addition to each sales price.[1]

Midway also paid the New Mexico resources excise tax and the New Mexico severance tax. Both taxes were excises imposed for the privilege of severing natural resources. Midway included both these taxes when it set the per-ton price of the coal sold to APS. Midway gave APS a monthly accounting of the effect of these taxes on the purchase price.

APS claimed Arizona credit for the New Mexico severance and resource excise taxes and also for the New Mexico and McKinley County gross receipts taxes. DOR allowed credit for New Mexico gross receipts taxes but not for the other taxes.

APS exhausted its administrative remedies and appealed to the State Board of Tax Appeals. The Board denied APS credit for the New Mexico severance and resources excise taxes but recognized a credit for the McKinley County gross receipts tax.

DOR and APS appealed to the tax court and the appeals were consolidated. On cross-motions for summary judgment, the tax court granted APS a refund for the McKinley County gross receipts tax credit but denied credit for the New Mexico re-

sources excise and severance taxes. DOR timely appealed and APS timely cross-appealed.

We have jurisdiction pursuant to A.R.S. section 12–2101(B). The appeal is assigned to Department T of this court pursuant to A.R.S. sections 12–120.04(G) and 12–170(C).

## ANALYSIS

### WHETHER THE MCKINLEY COUNTY GROSS RECEIPTS TAX QUALIFIES FOR THE ARIZONA STATUTORY EXEMPTION.

■ DOR contends the tax court improperly held that the county gross receipts tax was imposed "under the laws of another state." A.R.S. § 42–1409(A)(2). DOR argues that the statutory language is subject to more than one interpretation and consequently must be interpreted to disfavor any exemption. *Ebasco Servs. Inc. v. State Tax Comm'n,* 105 Ariz. 94, 99, 459 P.2d 719, 724 (1969).

APS contends that the McKinley County gross receipts tax was imposed "under" the laws of another state and, as such, was properly credited against the Arizona use tax. APS argues that DOR reads the exemption as if it applied only to taxes that the state itself directly enacts. APS reasons that the meaning of A.R.S. section 42–1409(A)(2) is facially clear and, therefore, we need not apply rules of statutory construction.

We look to the language of the statute to determine legislative intent. *City of Show Low v. Owens,* 127 Ariz. 266, 268, 619 P.2d 1043, 1045 (App.1980). If the statutory language is clear and unambiguous, we interpret that language without resorting to other methods of statutory interpretation. *Hayes v. Continental Ins.,* 178 Ariz. 264, 267, 872 P.2d 668, 671 (1994). We give the words in a statute their usual and common meaning unless the legislature clearly intended a differ-

---

1. The New Mexico gross receipts tax was 3.75% from January 1, 1986 through June 30, 1986, and 4.75% from July 1, 1986, through December 31, 1989. McKinley County's gross receipts tax was 0.375% from January 1, 1986, through December 31, 1988, and 0.5% from January 1, 1989, through December 31, 1989.

During the period from January 1, 1986, through December 31, 1989, Arizona's use tax was 5%. No Arizona county or city taxes applied to APS's use of the coal in Arizona.

ent meaning. *State v. Korzep,* 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990).

Arizona law provides an exemption for:

Tangible personal property the sale or use of which has already been subjected to an excise tax equal to or exceeding the tax imposed by this article **under the laws of another state of the United States.**

A.R.S. § 42–1409(A)(2) (emphasis added). DOR contends that the phrase "under the laws of another state" is ambiguous and, further, that we should distinguish between county and state taxation. DOR emphasizes that New Mexico did not require McKinley County to impose taxes. Absent a directive, DOR argues, the county taxes were not imposed "under" the laws of New Mexico.

■ There are two problems with DOR's interpretation. In the first place DOR ignores the inherent relationship McKinley County necessarily shares with the state of New Mexico. Counties are state-created entities. *Board of Sup'rs of Maricopa County v. Stanford,* 70 Ariz. 277, 282, 219 P.2d 769, 772 (1950); *Haupt v. Maricopa County,* 8 Ariz. 102, 105, 68 P. 525, 526 (1902). Counties have only the powers that a state gives them. *Haupt,* 8 Ariz. at 105, 68 P. at 526; *See Munro v. Albuquerque,* 48 N.M. 306, 150 P.2d 733, 738 (1943). Counties draw their taxing authority from the state constitution. *See Allison Realty v. Graves Inv. Co.,* 115 Fla. 48, 155 So. 745, 750 (1934).

The derivative relationship between a state and its counties means that when a county imposes a tax, it does so pursuant to a delegation of state tax authority. McKinley County is no exception. Its tax was imposed under the laws of New Mexico because that state's enabling statutes created its taxing power. Given this relationship, the word "under" is not ambiguous.

■ Furthermore, and contrary to our analysis above, if we agreed with DOR that the term "under" refers only to a state tax, the outcome would raise a constitutional problem. The Commerce Clause of the United States Constitution forbids discrimination against interstate commerce. *Associated Indus. of Missouri v. Lohman,* 511 U.S. 641, 646, 114 S.Ct. 1815, 1820, 128 L.Ed.2d 639 (1994). A state may not subject a transaction to a greater tax when it crosses state lines than when it occurs entirely intrastate. *Id.*

■ State use taxes typically apply only to the use of goods purchased outside the taxing state and brought into it. A use tax thus inherently discriminates against interstate commerce. Nevertheless, such a tax is valid under the Commerce Clause as a "compensatory tax" if the state imposes an intrastate tax such that the burdens imposed on interstate and intrastate commerce are equal. *Lohman,* 511 U.S. at 647, 114 S.Ct. at 1820–21. The taxpayer's out-of-pocket expenses determine whether the burdens are equal. *See id.* ("[E]qual treatment for in-state and out-of-state taxpayers similarly situated is the condition precedent for a valid use tax on goods imported from out-of-state." (quoting *Halliburton Oil Well Cementing Co. v. Reily,* 373 U.S. 64, 70, 83 S.Ct. 1201, 1204, 10 L.Ed.2d 202 (1963))).

The tax schemes at issue here consist of Arizona's compensating use tax of 5% and its sales tax of 5%. When APS purchased coal in McKinley County, it paid the New Mexico gross receipts taxes of 3.75% during part of the audit period and 4.75% during the remaining period. It also paid the McKinley County gross receipts taxes of 0.375%, which later increased to 0.5%.

If the latest New Mexico state and county rates are combined, APS paid a total tax rate of 5.25%, a sum 0.25% higher than the corresponding Arizona sales tax rate. If APS does not receive an exemption for the McKinley County gross receipts taxes, Arizona would be requiring it to pay more taxes than a similar in-state purchaser. Thus, if we interpret the statute as DOR encourages us to do, the Arizona use tax would pose serious constitutional problems in the facts presented here.

■ If possible, courts must construe statutes to be constitutional. *Arizona Downs v. Arizona Horsemen's Found.,* 130 Ariz. 550, 554, 637 P.2d 1053, 1057 (1981). As noted above, we find no ambiguity in the term "under."

### WHETHER THE NEW MEXICO RESOURCES EXCISE AND THE NEW MEXICO SEVERANCE TAXES QUALIFY FOR THE STATUTORY EXEMPTION.

■ APS argues that the tax court should have granted it a tax exemption because it paid the New Mexico resources excise and severance taxes. The parties do not dispute that coal is tangible personal property or that New Mexico resources excise and severance taxes constitute excise taxes under the laws of New Mexico. Eligibility for an exemption thus depends on whether the taxes are levied on the "sale or use" of the coal. A.R.S. § 42–1409(A)(2). APS maintains that the statutory exemption requires nothing more than an excise tax resulting from a sale. In other words, APS argues that the Arizona exemption applies to more than just a sales tax. Citing *Yankee Atomic Elec. v. New Mexico and Arizona Land Co.*, 632 F.2d 855 (10th Cir.1980), APS states that the resources excise and severance taxes were imposed on a "sale or use" because the sale of severed coal, its transportation from New Mexico, and its consumption trigger the obligation to pay the taxes.

In response DOR argues that neither of the New Mexico taxes qualifies for statutory exemption because one tax addresses the privilege of "severing and processing natural resources" under New Mexico Statutes Annotated (N.M.S.A.) section 7–25–2 (Michie 1978), and the other tax addresses the privilege of "severing natural resources" under N.M.S.A. section 7–26–3. Because the New Mexico taxes do not address the sale or use of property, DOR claims that these taxes do not merit an Arizona exemption. DOR further argues that *Yankee Atomic* does not address the nature of the excise tax but discusses only the timing of the event triggering the obligation to pay. DOR also questions *Yankee Atomic's* proposition that the incidence of the New Mexico resource excise and severance taxes falls on the sale of coal.

In reply APS argues that A.R.S. section 42–1409(A)(2) neither requires a tax equivalent to Arizona's retail transaction privilege tax nor does the tax constitute a sales or use tax. APS argues that if the statute gave exemptions only for sales taxes, no taxes

resembling Arizona's retail transaction privilege tax would qualify, including the New Mexico gross receipts tax. APS concludes that because the taxes in question are both excises imposed on the sale of Midway's coal in New Mexico, they qualify for the statutory exemption.

We look to the language of the statute to determine legislative intent. *Owens*, 127 Ariz. at 268, 619 P.2d at 1045. We agree that the legislature did not intend to limit the exemption only to sales taxes imposed by sister states. Strictly speaking a sales tax is imposed directly on a sale of goods or services and must generally be collected by the seller as the ultimate liability of the consumer. *See generally* 2 JEROME R. HELLERSTEIN AND WALTER HELLERSTEIN, STATE TAXATION ¶¶ 12.03, 12.04 (1992). As APS correctly observes, such an interpretation excludes both the New Mexico gross receipts tax and the Arizona retail transaction privilege tax.

However, not every excise tax imposed in some loose connection with a sale merits an exemption. As we observed above, the statutory language exempts from the use tax the storage, use, or consumption in Arizona of "[t]angible personal property **the sale or use of which has already been subjected to an excise tax** equal to or exceeding the tax imposed by this article under the laws of another state of the United States." A.R.S. § 42–1409(A)(2) (emphasis added). The legislature's requirement that the sale or use of the property be subjected to a sister state's excise tax requires more than an incidental connection with a sale or use.

The legislative intent reflected in A.R.S. section 42–1409(A)(2) suggests a resolution. The statute requires taxes only for the "storage, use or consumption of tangible personal property **purchased from a retailer**." A.R.S. § 42–1408(A) (emphasis added). As in section 42–1409(A)(2), this highlighted language indicates that the use tax and the exemption apply to sales at retail. Thus only if a retail sale has occurred does an excise tax merit an exemption for Arizona use tax liability.

■ Finally, where the statutory language is truly ambiguous, we construe the statute

strictly against exemption from taxation. *Ebasco,* 105 Ariz. at 94, 459 P.2d at 719. Because the wording "sale or use" presents such an ambiguity, we conclude that the statutory exemption is restricted to: (1) excises imposed directly on each sale or purchase of tangible personal property at retail, such as "true" sales taxes, and (2) excises imposed on the business of selling tangible personal property at retail, such as that levied by Arizona's retail transaction privilege statute.

To the extent that the *Yankee Atomic* decision is inconsistent with our holding we disagree with it. Dissenting Judge Doyle's analysis is persuasive:

> [The New Mexico statute] provides that the taxes are due on or before the 25th day of the month following the month that one of three events occur: sale, transportation out of New Mexico, or consumption. This is not, however, *because* of the sale or *because* of the transportation, etc. that the tax becomes due and payable ...

> [The statutory language] leads to the conclusion that the tax is being imposed upon severance of the uranium from the land ... It cannot reasonably be interpreted to mean that a tax was to be imposed upon the *sale* of the uranium, as this directly contradicts the entire purpose of the tax ... to impose a unified system of severance taxes on the severance of natural resources in New Mexico.

*Yankee Atomic,* 632 F.2d at 859–60.

New Mexico's resources excise and severance taxes target neither the privilege of buying coal nor the privilege of engaging in business. These taxes address only the severing or processing of coal in New Mexico. The tax court properly determined that APS did not merit a statutory exemption for paying New Mexico resources excise and severance taxes.

## *ATTORNEY FEES AND COURT COSTS*

APS has requested attorney fees. Per A.R.S. section 12–348 we award attorney fees and court costs to APS.

## *CONCLUSION*

For the reasons stated above, the judgment is affirmed.

NOYES, P.J., and McGREGOR, C.J., concur.