48 P.3d 1212

Leonard MOSCHCAU and Eva Scott, Acting Individually as Signers and Petition Circulators, and on behalf of the Signers of an Initiative Petition and on behalf of Stop, a Political Action Committee, Plaintiffs–Appellees,

v.

MOHAVE COUNTY, a body politic, ex rel., Brad R. NELSON, Election Director, Defendant–Appellant.

No. 1 CA–CV 02–0039.

Court of Appeals of Arizona, Division 1, Department A.

July 11, 2002.

William J. Eckstrom, Mohave County Attorney By John K. White, Deputy County Attorney, Kingman, Attorneys for Appellant.

Harvey R. Jackson, Lake Havasu City, Attorney for Appellees.

## OPINION

SULT, Judge.

¶ 1 In this opinion, we determine that a county's imposition of a transaction privilege tax pursuant to the authority of Arizona Revised Statutes section 42–6103 (Supp.2001) is a "legislative" act subject to the initiative power reserved to the citizens of the county under Article 4, Part 1, Section 1(8) of the Arizona Constitution.

## BACKGROUND

¶ 2 Section 42–6103 authorizes small Arizona counties to levy a local transaction privilege tax on businesses subject to the statewide transaction privilege tax. This county tax is in addition to the state tax, and may be imposed at up to ten percent of the rate at which the state tax is levied. Counties must use the revenue from this tax exclusively to enhance countywide services. The full text of the statute is as follows:

A. A county having a population of less than one million five hundred thousand persons, according to the most recent United States decennial census, on a unanimous vote of the board of supervisors, may levy and, if levied, the department [of revenue] shall collect a county general excise tax on each person engaging or continuing in the county in a business taxed under chapter 5, article 1 of this title and § 42–5352, subsection A. (footnote omitted)

B. The excise tax levied pursuant to subsection A of this section shall be at a rate applied as a percentage of the rates pre-

scribed by § 42–5010, subsection A on each class of business subject to the tax imposed by chapter 5, article 1 of this title and § 42–5352, subsection A, not to exceed ten per cent.

C. At the end of each month the state treasurer shall transmit the net revenues collected pursuant to this section to the treasurer of the county levying the tax. The county shall use these revenues to support and enhance countywide services.

¶3 Pursuant to the statute, the Mohave County Board of Supervisors in August 1999 approved Resolution No. 99–148 unanimously adopting a county transaction privilege tax. The Board set the rate at five per cent of the statewide rate on each class of business subject to the state transaction privilege tax. The Resolution provided that the tax was to be in effect from January 1, 2000 through December 31, 2019, and was restricted to offsetting the costs of planning, acquiring, designing, improving, constructing, and renovating specified county facilities.

¶4 Appellees, county residents, sought through the initiative power of Article 4, Part 1, Section 1(8) of the Arizona Constitution to place before county voters the repeal of this enactment. The County refused to accept appellees' petitions on the basis that imposition of the tax was not a legislative act subject to the initiative process but was merely an administrative act implementing the state statute authorizing the tax.

¶5 Appellees brought a special action in superior court seeking a declaration that the passage of the taxing ordinance was subject to repeal by initiative. Appellees also sought a writ of mandamus to compel the county elections director to accept their petitions. The trial court rejected the request for mandamus relief as untimely but determined that Resolution 99–148 was subject to the initiative process. The County timely appealed the latter ruling.

## ANALYSIS

¶6 The power of the initiative embodied in the Arizona Constitution is available to citizens to repeal or amend only legislative acts of the state or one of its political subdivisions. The initiative cannot be used to modify purely administrative actions that simply carry existing legislation into effect. *Wennerstrom v. City of Mesa*, 169 Ariz. 485, 488, 821 P.2d 146, 149 (1991). The *Wennerstrom* court explained how to determine whether an act is legislative or administrative.

The test of what is a legislative and what is an administrative proposition, with respect to the initiative or referendum, has further been said to be whether the proposition is one to make new law or to execute law already in existence. The power to be exercised is legislative in its nature if it prescribes a new policy or plan; whereas, it is administrative in its nature if it merely pursues a plan already adopted by the legislative body itself, or some power superior to it.

*Id.* at 489, 821 P.2d at 150 (quoting 5 E. McQuillin, *The Law of Municipal Corporations* § 16.55, at 266 (3d rev. ed.1989)).

¶7 The County's theme in this appeal derives from the legislative/administrative dichotomy described in *Wennerstrom*. The County characterizes its Resolution 99–148 as a mere administrative implementation of a tax already enacted by § 42–6103 and therefore the initiative process cannot be employed to defeat the Resolution. The County asserts that this characterization as administrative is required because only the state has the sovereign authority to enact a tax law and a county's involvement therewith can only be as an administrative agent of the state. Citing *City of Bisbee v. Cochise County*, 52 Ariz. 1, 12–17, 78 P.2d 982, 986–88 (1938) and *County of Maricopa v. Anderson*, 81 Ariz. 339, 343, 306 P.2d 268, 271 (1957), the County explains in its brief:

[W]e easily deduce from these cases that inasmuch as the power to tax is a sovereign power which counties cannot possess, but one which the Legislature may empower counties to exercise, that there is a distinction between the Legislature *enacting a tax statute* which confers the right to exercise a sovereign power upon a county and the county *executing* its right to exercise that power of taxation in the manner conferred on it by that statute. *That is, we see that while the Legislature cannot*

delegate to counties the sovereign power to make a tax law, the Legislature can make a tax law which delegates to counties the power to execute, as an agent of the State, the provisions of a tax law enacted by the Legislature.

¶ 8 The County bolsters its position by pointing out that the language of § 42–6103 contains nothing that expresses an intent to allow counties to "enact" or "make and enforce an ordinance." It urges that § 42–6103 neither expressly nor by necessary implication provides "that it is necessary for a county to enact a local tax law or ordinance in order to effect the levy of an A.R.S. § 42–6103 excise tax. A county need only execute the statute in accordance with its terms, and the tax is levied."

■ ¶ 9 We disagree with the County's characterization of its effort as mere administrative execution of an existing state-imposed tax. It is certainly true that the sovereign power of taxation inheres in the state. *See City of Bisbee*, 52 Ariz. at 12–17, 78 P.2d at 986–88. It does not follow, however, that when the state delegates local taxing power to a county, city, or town that the exercise of that power is merely administrative. The County cites no authority that even intimates this to be the case.

■ ¶ 10 By levying a tax as authorized by § 42–6103, a county does not merely execute a state taxing statute. By itself, § 42–6103 does not represent an exercise of the state's taxing power at all. Instead, it is an exercise of the state's inherent authority to delegate to a county the sovereign authority to levy its own tax. As we said in *Arizona Department of Revenue v. Arizona Public Serv. Co.*, 188 Ariz. 232, 235, 934 P.2d 796, 799 (App.1997), "[t]he derivative relationship between a state and its counties means that when a county imposes a tax, it does so pursuant to a delegation of state tax authority." *See also Maricopa County v. Southern Pacific Co.*, 63 Ariz. 342, 347, 162 P.2d 619, 622 (1945) (a county may levy such taxes as state statutes authorize). Under § 42–6103, only the county actually adopts, enacts, imposes, or levies a county general excise tax.

¶ 11 The characteristics of the authority that § 42–6103 delegates to counties unmistakably stamp its exercise as legislative. As *Wennerstrom* teaches, if determinations of policy inhere in a governmental decision, the decision is a legislative one. While it is true, as the County points out, that the state legislature has already made one policy decision through § 42–6103, namely that counties must use the tax revenue to support and enhance countywide services, this is not the only policy determination involved in levying the authorized tax. The fundamental policy decision whether the tax is to be imposed at all must first be made. Then, if the decision is made to proceed with the tax, the policy decision of the rate at which to tax must be agreed upon. Section 42–6103 leaves these policy determinations to the county legislative body and these determinations mark the county's functioning in this context as fundamentally legislative. *See Tanque Verde Enterprises v. City of Tucson*, 142 Ariz. 536, 542, 691 P.2d 302, 308 (1984) (setting tax rates is a legislative function). As appellees succinctly state:

Mohave County enacted a tax that it did not have to enact. This was not a ministerial act, as Mohave County only has the tax in question if the Board of Supervisors votes to enact the tax.... [T]he County would not have a tax without the enactment, and can repeal the enactment, therefore it is a legislative action.

## CONCLUSION

¶ 12 The trial court ruled as a matter of law that Resolution 99–148 was a legislative act and that county voters could invoke the power of local initiative under Article 4, Part 1, Section 1(8) of the Arizona Constitution to attempt to repeal that Resolution. Because this is a question of law, we have reviewed it independently. *San Carlos Apache Tribe v. Superior Court*, 193 Ariz. 195, 203, ¶ 9, 972 P.2d 179, 187 (1999). Our review discloses that the trial court correctly found the law, and we therefore affirm its judgment.

CONCURRING: PHILIP HALL and JON W. THOMPSON, Judges.