# IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

## September 2016 Term

No. 15-0935

**FILED**
**November 16, 2016**
released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

### MARK W. MATKOVICH,
### WEST VIRGINIA STATE TAX COMMISSIONER,
Petitioner Below, Petitioner

V.

### CSX TRANSPORTATION, INC.,
Respondent Below, Respondent

Appeal from the Circuit Court of Kanawha County
Honorable Louis H. Bloom, Judge
Civil Action No. 15-AA-36

### AFFIRMED

Submitted: October 25, 2016
Filed: November 16, 2016

Patrick Morrisey
Attorney General
Katherine A. Schultz
Senior Deputy Attorney General
Charleston, West Virginia
Attorneys for the Petitioner

James W. McBride, *pro hac vice*
Baker, Donelson, Bearman, Caldwell
& Berkowitz, PC
Washington, District of Columbia
Michael P. Markins
Cipriani & Werner PC
Charleston, West Virginia
Attorneys for the Respondent

**JUSTICE DAVIS delivered the Opinion of the Court.**

**SYLLABUS BY THE COURT**

1.     "In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in *W. Va. Code*, 29A-5-4(g) [1988]. Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*." Syllabus point 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012).

2.     "A state tax on interstate commerce will not be sustained unless it: '(1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate; and (4) is fairly related to the services provided by the State.' *Maryland v. Louisiana*, 451 U.S. 725, [754], 101 S. Ct. 2114, 2133, 68 L. Ed. 2d 576 (1981)." Syllabus point 1, *Western Maryland Railway Co. v. Goodwin*, 167 W. Va. 804, 282 S.E.2d 240 (1981).

3.     The sales tax credit granted by W. Va. Code § 11-15A-10a(a) (2003) (Repl. Vol. 2010) provides a credit for sales taxes paid both to other states and to the subdivisions and municipalities of other states.

**Davis, Justice:**

The petitioner herein and petitioner below, Mark W. Matkovich, West Virginia State Tax Commissioner ("Tax Commissioner"), appeals from an order entered August 24, 2015, by the Circuit Court of Kanawha County. By that order, the circuit court affirmed a January 23, 2015, decision by the Office of Tax Appeals, which found that the respondent herein and respondent below, CSX Transportation, Inc. ("CSX"), is entitled to a credit under W. Va. Code § 11-15A-10a (2003) (Repl. Vol. 2010) for the sales taxes it paid to other states' subdivisions on its purchases of motor fuel therein. On appeal to this Court, the Tax Commissioner argues that the circuit court erred by allowing CSX a tax credit for all sales taxes it paid to other states' cities, counties, and other municipalities on the purchase of motor fuel therein rather than limiting the credit to sales taxes paid only to other states upon such purchases. Upon a review of the parties' arguments, the appendix record, and the pertinent authorities, we affirm the ruling of the circuit court. In summary, we conclude that the sales tax credit afforded by W. Va. Code § 11-15A-10a applies *both* to sales taxes paid to other states *and* to sales taxes paid to the municipalities of other states.

**I.**

**FACTUAL AND PROCEDURAL HISTORY**

The facts giving rise to the case *sub judice* are not disputed by the parties. CSX operates an interstate rail transportation system. Although CSX is a Virginia corporation with its principal place of business in Jacksonville, Florida, CSX also operates trains and maintains rail yards throughout the State of West Virginia. In 2010, an auditor from the West Virginia State Tax Department ("Tax Department") met with a representative of CSX at one of its West Virginia rail yards to conduct a field audit. As a result of this meeting, the auditor determined that CSX imports fuel that it uses in West Virginia, and, thus, CSX was directed to begin paying the West Virginia Motor Fuel Use Tax ("use tax"), imposed by W. Va. Code § 11-15A-13a (2003) (Repl. Vol. 2010),[1] on the fuel it uses in West Virginia.

W. Va. Code § 11-15A-10a (2003) (Repl. Vol. 2010)[2] affords taxpayers a credit for sales taxes paid to other states, which, with respect to the case *sub judice*, offsets the use tax a fuel importer must pay under W. Va. Code § 11-15A-13a. Following the aforementioned assessment, CSX filed amended use tax returns seeking a refund of the sales taxes it had paid on its motor fuel purchases to cities, counties, and localities of other states

---

[1]For the relevant statutory language, see Section III, *infra*. It also should be noted that the Legislature amended this statute in 2013; therefore, we will apply the prior version of the statute that was in effect at the time of the events giving rise to the instant proceeding.

[2]See *infra* Section III for the pertinent statutory language.

pursuant to W. Va. Code § 11-15A-10a. The Tax Commissioner rejected CSX's refund request. During the evaluation of CSX's refund request, auditors with the Tax Department concluded that CSX had been improperly calculating the sales tax credit it was entitled to claim under W. Va. Code § 11-15A-10a. This inquiry led the Tax Department to issue a Notice of Assessment against CSX in June 2013, as well as the Tax Department's adoption of a new methodology, for most of tax year 2012, of determining how many gallons of motor fuel CSX was deemed to have used in West Virginia and how many of those gallons were purchased in other states.

Thereafter, CSX timely filed a petition for refund with the Office of Tax Appeals ("OTA"), challenging the denial of its refund request, and a petition for reassessment, contesting the June 2013 Notice of Assessment. Both petitions were consolidated, and, by final decision rendered January 23, 2015, the OTA granted CSX's refund request and vacated the 2013 assessment. In summary, the OTA determined that, under the dormant Commerce Clause,[3] CSX was entitled to a credit under W. Va. Code § 11-15A-10a for the sales taxes it had paid on motor fuel purchased from the cities, counties, and other municipalities of other states. Otherwise, the OTA opined, a denial of such credit would unconstitutionally discriminate against interstate commerce in violation of the dormant Commerce Clause.

---

[3]For further treatment of the dormant Commerce Clause, see Section III, *infra*.

The Tax Commissioner then appealed to the Circuit Court of Kanawha County. By order entered August 24, 2015, the circuit court affirmed the OTA's final decision. In so ruling, the circuit court agreed that the Tax Commissioner's allowance of a credit, to be applied to the use tax due from CSX, for sales taxes CSX paid to other states upon its purchases of motor fuel therein, coupled with a denial of such a credit for the sales taxes CSX paid to the cities, counties, and other localities of such states, unfairly discriminates against interstate commerce in violation of the dormant Commerce Clause. The circuit court further concluded that denying the credit for sales taxes paid to municipalities results in taxpayers potentially paying greater taxes on interstate purchases of motor fuel than on similar intrastate purchases.[4] From this adverse ruling, the Tax Commissioner appeals to this Court.

## II.

## STANDARD OF REVIEW

The sole issue presented by the case *sub judice* concerns the proper interpretation and application of the use tax credit provided by W. Va. Code § 11-15A-10a. Procedurally, the instant matter comes to this Court as an appeal from the Office of Tax Appeals that was affirmed by the circuit court. We previously have explained the standard

---

[4]The circuit court additionally ordered the parties to submit calculations of the refund requested and the proper assessment of the subject taxes CSX is required to pay for 2012.

of review applicable to such a proceeding as follows:

> In an administrative appeal from the decision of the West Virginia Office of Tax Appeals, this Court will review the final order of the circuit court pursuant to the standards of review in the State Administrative Procedures Act set forth in *W. Va. Code*, 29A-5-4(g) [1988].[5] Findings of fact of the administrative law judge will not be set aside or vacated unless clearly wrong, and, although administrative interpretation of State tax provisions will be afforded sound consideration, this Court will review questions of law *de novo*.

Syl. pt. 1, *Griffith v. ConAgra Brands, Inc.*, 229 W. Va. 190, 728 S.E.2d 74 (2012) (footnote

---

[5]W. Va. Code § 29A-5-4(g) (1998) (Repl. Vol. 2015) defines the scope of judicial review of contested cases as follows:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
>
> (1) In violation of constitutional or statutory provisions; or
>
> (2) In excess of the statutory authority or jurisdiction of the agency; or
>
> (3) Made upon unlawful procedures; or
>
> (4) Affected by other error of law; or
>
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

added).  Moreover, we previously have held that "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review."  Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W. Va. 573, 466 S.E.2d 424 (1995).  *Accord* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").  In keeping with these standards, we proceed to consider the parties' arguments.

## III.

## DISCUSSION

Despite the numerous errors assigned in this case, the crux of the Tax Commissioner's argument can be distilled into a single issue: is a taxpayer, who is required to pay the motor fuel use tax imposed by W. Va. Code § 11-15A-13a, entitled to a sales tax credit, under W. Va. Code § 11-15A-10a, for sales taxes paid both to other states and to the municipalities of other states?  Both the OTA and the circuit court determined that, to be constitutional under the dormant Commerce Clause, said credit must be granted for *both* sales taxes paid to other states *and* for sales taxes paid to the municipalities of other states. We reach the same conclusion.

The specific tax at issue in this proceeding is a use tax. Simply stated, "[a] use tax is collected when a good is sold from an out-of-state supplier for use within a state." *J.C. Penney Co., Inc. v. Hardesty*, 164 W. Va. 525, 530, 264 S.E.2d 604, 608 (1979). Pursuant to W. Va. Code § 11-15A-13a (2003) (Repl. Vol. 2010), a use tax is imposed upon taxpayers who purchase motor fuel outside of West Virginia but who use such fuel within this State.[6]

---

[6]In pertinent part, W. Va. Code § 11-15A-13a(a) (2003) (Repl. Vol. 2010) imposes the motor fuel use tax as follows:

(2) *On purchases out-of-state subject to motor fuel tax*. – Effective the first day of January, two thousand four, an excise tax is imposed on the importation into this state of motor fuel purchased outside this state when the purchase is subject to the flat rate of the tax imposed by section five [§ 11-14C-5], article fourteen-c of this chapter: Provided, That the rate of the tax due under this article shall in no event be less than five percent of the average wholesale price of the motor fuel, as determined in accordance with said section five, article fourteen-c: Provided, however, That the motor fuel subject to the tax imposed by this article shall comprise the variable component of the tax imposed by the said section five, article fourteen-c, and shall be collected and remitted by the seller at the time the seller remits the tax imposed by the said section five, article fourteen-c.

(3) *On other purchases out-of-state*. – An excise tax is hereby imposed on the use or consumption in this state of motor fuel purchased outside this state at the rate of five percent of the average wholesale price of the motor fuel, as determined in accordance with section five [§ 11-14C-5], article fourteen-c of this chapter: Provided, That motor fuel contained in the fuel supply tank of a motor vehicle that is not a motor carrier shall not be taxable, except that motor fuel imported in the fuel supply tank or auxiliary tank of construction equipment, mining equipment, track maintenance equipment or other similar

(continued...)

This motor fuel use tax is calculated pursuant to W. Va. Code § 11-15A-13a(c)(1):

> (c) *Computation of tax due from motor carriers*. – Every person who operates or causes to be operated a motor carrier in this state shall pay the tax imposed by this section on the average wholesale price of all gallons of motor fuel used in the operation of any motor carrier within this state, under the following rules:
>
> (1) The total amount of motor fuel used in the operation of the motor carrier within this state is that proportion of the total amount of motor fuel used in a motor carrier's operations within and without this state, that the total number of miles traveled within this state bears to the total number of miles traveled within and without this state.[7]

(Footnote added).

Also at issue herein is the sales tax credit afforded to taxpayers for sales taxes they have paid to another state. Pursuant to W. Va. Code § 11-15A-10a (2003) (Repl. Vol. 2010),

> (a) [a] person is entitled to a credit against the tax imposed by this article on the use of a particular item of tangible personal property, custom software or service equal to the amount, if any, of sales tax lawfully paid to another state for the acquisition of that property or service: Provided, That the

---

[6](...continued)
equipment, is taxed in the same manner as that in the fuel supply tank of a motor carrier. *See supra* note 1.

[7]Additional subsections of W. Va. Code § 11-15A-13a(c) regarding the calculation of the subject tax are not at issue in this proceeding.

amount of credit allowed does not exceed the amount of use tax imposed on the use of the property in this state.

(b) For purposes of this section:

(1) "Sales tax" includes a sales tax or compensating use tax imposed on the use of tangible personal property or a service by the state in which the sale occurred; and

(2) "State" includes the District of Columbia but does not include any of the several territories organized by Congress.

This sales tax credit operates as an offset to the motor fuel use tax with which CSX was assessed. The controversy in this case relates to the extent of the sales tax credit allowed by W. Va. Code § 11-15A-10a, *i.e.*, whether such credit is limited to sales taxes paid *only* to other states or whether such credit is granted for sales taxes paid *both* to other states *and* the subdivisions of other states.

Our consideration of this issue is guided by the Commerce Clause, the dormant Commerce Clause, and the cases analyzing these provisions.

> The Commerce Clause grants Congress power to "regulate Commerce . . . among the several States." [U.S. Const.] Art. I, § 8, cl. 3. . . . Although the Clause is framed as a positive grant of power to Congress, "we have consistently held this language to contain a further, negative command, known as the dormant Commerce Clause, prohibiting certain state taxation even when Congress has failed to legislate on the subject." *Oklahoma Tax Comm'n v. Jefferson Lines, Inc.*, 514 U.S. 175, 179, 115 S. Ct. 1331, [1335,] 131 L. Ed. 2d 261 (1995).
>
> . . . .

9

> Under our precedents, the dormant Commerce Clause precludes States from "discriminat[ing] between transactions on the basis of some interstate element." *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 332, n. 12, 97 S. Ct. 599, [608, n. 12,] 50 L. Ed. 2d 514 (1977). This means, among other things, that a State "may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State." *Armco Inc. v. Hardesty*, 467 U.S. 638, 642, 104 S. Ct. 2620, [2622,] 81 L. Ed. 2d 540 (1984). "Nor may a State impose a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of 'multiple taxation.'" *Northwestern States Portland Cement Co. v. Minnesota*, 358 U.S. 450, 458, 79 S. Ct. 357, [362,] 3 L. Ed. 2d 421 (1959) (citations omitted).

*Comptroller of the Treasury of Maryland v. Wynne*, ___ U.S. ___, ___, 135 S. Ct. 1787, 1794, 191 L. Ed. 2d 813 (2015).

To determine constitutionality under the dormant Commerce Clause, the United States Supreme Court has developed a test, known as the *Complete Auto* test,[8] wherein the Court "considered not the formal language of the tax statute but rather its practical effect" and provided a list of criteria a reviewing court should consider. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 279, 97 S. Ct. 1076, 1079, 51 L. Ed. 2d 326 (1977). We adopted this test in Syllabus point 1 of *Western Maryland Railway Co. v. Goodwin*, 167 W. Va. 804, 282 S.E.2d 240 (1981), holding:

----

[8]*See Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326 (1977).

A state tax on interstate commerce will not be sustained unless it: "(1) has a substantial nexus with the State; (2) is fairly apportioned; (3) does not discriminate; and (4) is fairly related to the services provided by the State." *Maryland v. Louisiana*, 451 U.S. 725, [754], 101 S. Ct. 2114, 2133, 68 L. Ed. 2d 576 (1981).

While this test is phrased in terms of a tax that is charged to a taxpayer, it has been applied with equal force to credits afforded to taxpayers. *See generally Comptroller of the Treasury of Maryland v. Wynne*, ___ U.S. ___, 135 S. Ct. 1787, 191 L. Ed. 2d 813; *Arizona Dep't of Revenue v. Arizona Pub. Serv. Co.*, 188 Ariz. 232, 934 P.2d 796 (Ct. App. 1997); *General Motors Corp. v. City & Cnty. of Denver*, 990 P.2d 59 (Colo. 1999) (en banc).

### A. Substantial Nexus

With respect to the first factor, "substantial nexus with the State,"[9] we have recognized that

> when a direct relationship can be demonstrated between the tax and the cost to the State of the benefits and protections it affords, there is a sufficient nexus for taxation, but the opposite is not true, i.e., nexus may exist even if the in-state activities are not shown to cost the State as much as the amount of the taxes.

*Western Maryland*, 167 W. Va. at 809, 282 S.E.2d at 244 (citations omitted). Therefore, "purposive, revenue generating activities in the State are sufficient to render a person liable for taxes" and to satisfy the nexus requirement. *Id.*

---

[9]Syl. pt. 1, in part, *Western Maryland Railway Co. v. Goodwin*, 167 W. Va. 804, 282 S.E.2d 240 (1981) (internal quotations and citations omitted).

Under the facts of the case *sub judice*, we conclude that both the use tax imposed by W. Va. Code § 11-15A-13a and the sales tax credit allowed by W. Va. Code § 11-15A-10a satisfy this first requirement of "substantial nexus with the State." The parties do not dispute that CSX operates its rail service through the State of West Virginia and that it purchases fuel outside of West Virginia which it uses in its operations in this State.

### B. Apportionment

Next we consider the apportionment requirement, which "ensure[s] that each State taxes only its fair share of an interstate transaction." *Jefferson Lines*, 514 U.S. at 184, 115 S. Ct. at 1338, 131 L. Ed. 2d 261 (internal quotations and citation omitted). *Accord Japan Line, Ltd. v. Los Angeles Cnty.*, 441 U.S. 434, 446-47, 99 S. Ct. 1813, 1820, 60 L. Ed. 2d 336 (1979) ("In order to prevent multiple taxation of interstate commerce, this Court has required that taxes be apportioned among taxing jurisdictions, so that no instrumentality of commerce is subjected to more than one tax on its full value." (internal citations omitted)).

To evaluate whether a tax is "fairly apportioned," the United States Supreme Court ascertains whether the taxing scheme in question is internally consistent and externally consistent.

> Internal consistency is preserved when the imposition of a tax identical to the one in question by every other State would add

no burden to interstate commerce that intrastate commerce would not also bear. This test asks nothing about the degree of economic reality reflected by the tax, but simply looks to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate. A failure of internal consistency shows as a matter of law that a State is attempting to take more than its fair share of taxes from the interstate transaction, since allowing such a tax in one State would place interstate commerce at the mercy of those remaining States that might impose an identical tax. . . .

External consistency, on the other hand, looks not to the logical consequences of cloning, but to the economic justification for the State's claim upon the value taxed, to discover whether a State's tax reaches beyond that portion of value that is fairly attributable to economic activity within the taxing State. . . .

*Id.* at 185, 115 S. Ct. at 1338, 131 L. Ed. 2d 261 (citations omitted).

In considering the apportionment criterion, we have observed that

[a] tax on a person involved in both wholly intrastate commerce and interstate commerce with in-state aspects, must be tailored so as to attach primarily to revenue derived from in-state activities. In the case of transportation, it is true most of the time that a tax related to cargo or passenger miles traveled in state or to the miles of the line in state will be valid.

*Western Maryland*, 167 W. Va. at 809, 282 S.E.2d at 244 (citations omitted).

Applying these standards to the facts of the case *sub judice*, we conclude that the subject use tax is fairly apportioned. Consistent with our recognition in *Western*

*Maryland*, the use tax herein is calculated with specific reference to the amount of motor fuel CSX uses in its West Virginia operations:

> The total amount of motor fuel used in the operation of the motor carrier within this state is that proportion of the total amount of motor fuel used in a motor carrier's operations within and without this state, that the total number of miles traveled within this state bears to the total number of miles traveled within and without this state.

W. Va. Code § 11-15A-13a(c)(1). Thus, the use tax charged to CSX directly correlates to the fuel that it uses for the miles it travels within West Virginia; as such, the use tax is fairly apportioned.

However, we cannot reach the same conclusion with respect to the Tax Commissioner's interpretation of the corresponding sales tax credit. Pursuant to W. Va. Code § 11-15A-10a(a),

> [a] person is entitled to a credit against the tax imposed by this article on the use of a particular item of tangible personal property, custom software or service equal to the amount, if any, of sales tax lawfully paid to another state for the acquisition of that property or service: Provided, That the amount of credit allowed does not exceed the amount of use tax imposed on the use of the property in this state.

Other than indicating that the word "State" includes the District of Columbia but none of the United States' territories, the statute is silent as to the scope of the sales tax credit allowed. *See* W. Va. Code § 11-15A-10a(b)(2). In his arguments to the Court, the Tax Commissioner contends that the sales tax credit applies only to sales taxes that CSX has paid to other *states*

14

on its motor fuel purchases.  By contrast, CSX argues that it should be permitted to claim the sales tax credit *both* for sales taxes it has paid to other states upon its purchases of motor fuel *and* for sales taxes it has paid to the municipalities of other states upon its purchases of motor fuel.  We find CSX's position to be most in keeping with the Supreme Court's internal consistency test and recent cases interpreting the same.

For example, in *Comptroller of the Treasury of Maryland v. Wynne*, ___ U.S. ___, 135 S. Ct. 1787, 191 L. Ed. 2d 813, the Supreme Court reviewed a Maryland income tax scheme that allowed a credit to taxpayers for income tax they had paid to another state but did not allow a credit for income tax they had paid to the county of another state.  Finding this differential treatment to be invalid under the internal consistency test, the Court considered "not the formal language of the tax statute but rather its practical effect,"[10] because "[t]he Commerce Clause regulates effects, not motives."  *Id.* at ___ n.4, 135 S. Ct. at 1801 n.4, 191 L. Ed. 2d 813.  In reaching its decision, the Court further noted that "[t]he critical point is that the total tax burden on interstate commerce is higher," which contravenes the dormant Commerce Clause.  *Id.* at ___, 135 S. Ct. at 1805, 191 L. Ed. 2d 813.

---

[10]*Comptroller of the Treasury of Maryland v. Wynne*, ___ U.S. ___, ___, 135 S. Ct. 1787, 1795, 191 L. Ed. 2d 813 (2015) (internal quotations and citations omitted).

Likewise, in *General Motors Corp. v. City and County of Denver*, 990 P.2d 59

(Colo. 1999) (en banc), the Colorado Supreme Court examined a use tax levied by the City

and County of Denver, Colorado. Under the applicable law, the City and County provided

an offsetting sales tax credit, but only for such taxes paid to other states' municipalities. *See*

D.R.M.C. § 53-92(c). Evaluating whether the subject tax was valid under the Commerce

Clause, the Colorado court observed that

> [a] state tax is internally consistent if it is structured so
> that if every State were to impose an identical tax, no multiple
> taxation would result. . . . To avoid multiple taxation, a tax
> upon interstate commerce must either be apportioned to relate
> the tax to the activity taking place within the taxing state or it
> must allow a credit for other similar taxes paid by the taxpayer
> in other jurisdictions.

990 P.2d at 69 (internal quotations and citations omitted). Moreover, the court noted that

> the overwhelming majority of states meet the internal
> consistency test by providing a credit for sales or use taxes paid
> to other states. However, the crediting structure must be
> designed properly. Internal consistency requires that states
> impose identical taxes when viewed in the aggregate–as a
> collection of state and sub-state taxing jurisdictions. In other
> words, the interstate taxpayer should never pay more sales or use
> tax than the intrastate taxpayer.

*Id.* (internal quotations, citations, and footnote omitted). Upholding the tax's validity, the

Colorado Supreme Court ruled that

> Denver must provide GM with a credit for the sales and use
> taxes paid to other states and their subdivisions such that GM
> will pay no more tax on the automobiles than it would have paid
> by purchasing the component parts in the City and County of
> Denver, State of Colorado.

16

*Id.* at 71.  Without such offsetting credit, however, the subject tax would not be constitutionally valid.  *See id.*

Finally, in *Arizona Department of Revenue v. Arizona Public Service Co.*, 188 Ariz. 232, 934 P.2d 796 (Ct. App. 1997), the Arizona Court of Appeals considered whether that state's statute affording a tax credit for sales taxes "imposed . . . under the laws of another state of the United States," Ariz. Rev. Stat. § 42-1409(A)(2), applied only to sales taxes paid to other states or whether it applied also to sales taxes paid to the counties of other states.  In determining that the tax credit extends to *both* sales taxes paid to other states *and* to the counties of other states, the court recognized that

> [c]ounties are state-created entities[;] [c]ounties have only the powers that a state gives them[; and] [c]ounties draw their taxing authority from the state constitution.
>
> The derivative relationship between a state and its counties means that when a county imposes a tax, it does so pursuant to a delegation of state tax authority.

*Id.* at 235, 934 P.2d at 799 (citations omitted).  The court then reiterated the governing constitutional tenets:

> The Commerce Clause of the United States Constitution forbids discrimination against interstate commerce.  A state may not subject a transaction to a greater tax when it crosses state lines than when it occurs entirely intrastate.
>
> State use taxes typically apply only to the use of goods purchased outside the taxing state and brought into it.  A use tax thus inherently discriminates against interstate commerce.

17

> Nevertheless, such a tax is valid under the Commerce Clause as a "compensatory tax" if the state imposes an intrastate tax such that the burdens imposed on interstate and intrastate commerce are equal. The taxpayer's out-of-pocket expenses determine whether the burdens are equal.

*Id.* (citations omitted). Considering the tax credit at issue in the case, the Arizona court determined that the tax credit extends *both* to sales taxes paid to other states *and* to sales taxes paid to the counties of other states; otherwise, it reasoned, taxpayers paying both taxes but not receiving credit for both taxes would incur a higher tax burden than an in-state taxpayer who had not made such out-of-state purchases. *Id.*

Applying these authorities to the case *sub judice*, we agree with the circuit court's determination that the sales tax credit afforded by W. Va. Code § 11-15A-10a extends *both* to sales taxes CSX has paid to other states on its purchases of motor fuel therein *and* to sales taxes that CSX has paid to the subdivisions of other states when it has purchased motor fuel in such locales. Any other construction of this statute would invariably violate the Commerce Clause's prohibition on subjecting interstate transactions to a greater tax burden than that imposed on strictly intrastate dealings. The easiest way to demonstrate this dichotomy is through a simple math analysis. If, for example, CSX is required to pay a 5% use tax[11] on all motor fuel it uses in this State and if it is allowed a corresponding sales tax

---

[11]The figures used in this hypothetical example are for explanation purposes only and are not intended to reflect the precise measure of actual taxes assessed against or
(continued...)

18

credit for all fuel it has purchased out of state, such sales tax credit serves as an offset to CSX's use tax liability. Thus, in this example, if CSX pays 5% sales tax to State A, it would receive a 5% sales tax credit that completely offsets its use tax liability.

If, however, CSX pays 3% sales tax to State A and 2% sales tax to the City of Metropolis in State A, it still is paying 5% out-of-state sales tax but, under the Tax Commissioner's interpretation of the sales tax credit, CSX would pay substantially more use tax than a taxpayer who had not paid sales taxes to another state's subdivision. This is so because CSX is assessed the same 5% use tax, which is offset by the 3% State A sales tax and yields a residual 2% use tax liability. Because, in this scenario, CSX did not receive a sales tax credit for the additional 2% sales tax it paid to the City of Metropolis, however, CSX essentially is paying 7% in total taxes, *i.e.*, 5% use tax (which is partially offset by 3% credit for sales tax paid to State A) + 2% sales tax paid to City of Metropolis (for which Tax Commissioner did not grant it a sales tax credit) = 7%, simply because CSX transacted business interstate in a jurisdiction that allowed its subdivisions to charge a sales tax. Strictly in-state taxpayers would not incur this additional tax liability, nor would out-of-state taxpayers who paid sales taxes assessed only by states and not their subdivisions.

---

[11](...continued)
paid by CSX in the underlying proceedings.

19

Thus, because disallowance of the sales tax credit for sales taxes imposed by the subdivisions of other states would produce a "total tax burden on interstate commerce [that] is higher" than a purely intrastate transaction, *Wynne*, ___ U.S. at ___, 135 S. Ct. at 1805, 191 L. Ed. 2d 813, we find the Tax Commissioner's interpretation of the W. Va. Code § 11-15A-10a sales tax credit to be violative of the dormant Commerce Clause. Accordingly, we hold that the sales tax credit granted by W. Va. Code § 11-15A-10a(a) (2003) (Repl. Vol. 2010) provides a credit for sales taxes paid both to other states and to the subdivisions and municipalities of other states. Thus, we conclude that CSX is entitled to a sales tax credit, under W. Va. Code § 11-15A-10a, for the sales taxes it has paid both to other states and to the subdivisions thereof. As such, we affirm the rulings of the circuit court and the OTA reaching the same conclusion.

## *C. Discrimination*

The third factor examines whether the subject tax scheme discriminates or treats taxpayers differently. *See generally* Syl. pt. 1, *Western Maryland*, 167 W. Va. 804, 282 S.E.2d 240. "Essentially this criterion requires equal treatment of interstate and local commerce[.] No state may impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business." *Western Maryland*, 167 W. Va. at 809, 282 S.E.2d at 244 (internal quotations and citations omitted). In other words, "[a] State may not impose a tax which discriminates against interstate commerce by providing a

20

direct commercial advantage to local business. Thus, States are barred from discriminating against foreign enterprises competing with local businesses, and from discriminating against commercial activity occurring outside the taxing State." *Jefferson Lines*, 514 U.S. at 197, 115 S. Ct. at 1344, 131 L. Ed. 2d 261 (internal quotations and citations omitted).

Applying this query to the facts of the case *sub judice*, we find, as we did with the apportionment requirement, that the use tax imposed by W. Va. Code § 11-15A-13a is properly constructed so as to tax only the motor fuel that a motor carrier actually uses within the boundaries of this State. However, as with our foregoing analysis of the corresponding sales tax credit, we conclude that, under the interpretation afforded to W. Va. Code § 11-15A-10a by the Tax Commissioner, allowing the sales tax credit only for sales taxes paid to other states unfairly discriminates against interstate commerce. Therefore, we again determine that the proper, and constitutionally sound, construction to be afforded to this provision requires that it apply with equal force to grant a credit for sales taxes paid *both* to other states *and* to sales taxes paid to the municipalities of other states on purchases of motor fuel therein.

### D. Relationship

The fourth and final inquiry examines whether the tax on interstate commerce is "fairly related to the services provided by the State." Syl. pt. 1, in part, *Western Maryland*, 167 W. Va. 804, 282 S.E.2d 240. *Accord Jefferson Lines*, 514 U.S. at 199, 115 S. Ct. at 1345, 131 L. Ed. 2d 261 ("Finally, the Commerce Clause demands a fair relation between a tax and the benefits conferred upon the taxpayer by the State." (citations omitted)). In this regard, we have noted that

> there need not be any direct correlation between the value of benefits afforded the taxpayer by the State and the cost of the tax to the taxpayer. Once the nexus requirement has been met, the fourth criterion imposes the additional limitation that the measure of the tax must be reasonably related to the extent of the contact [and] the activities or presence of the taxpayer in the State. Therefore, when the measure of a tax is reasonably related to the taxpayer's activities or presence in the State[,] the taxpayer will realize, in proper proportion to the taxes it pays, the only benefit to which it is constitutionally entitled[:] that derived from his enjoyment of the privileges of living in an organized society, established and safeguarded by the devotion of taxes to public purposes.

*Western Maryland*, 167 W. Va. at 810, 282 S.E.2d at 245 (internal quotations and citations omitted). *See also Jefferson Lines*, 514 U.S. at 200, 115 S. Ct. at 1346, 131 L. Ed. 2d 261 ("*Complete Auto*'s fourth criterion asks only that the measure of the tax be reasonably related to the taxpayer's presence or activities in the State." (citation omitted)).

As with our review of the substantial nexus requirement, we likewise conclude that the subject use tax and corresponding sales tax credit are fairly related to the services provided to CSX by this State as well as to CSX's presence and activities herein. In short, CSX maintains an extensive system of railway lines in this State, and West Virginia, in turn, provides emergency services and other infrastructure related to CSX's operations.

Having considered each of the factors of the *Complete Auto* test, we are left with the definite and firm conclusion that both the OTA and the circuit court ruled correctly in determining that the sales tax credit granted by W. Va. Code § 11-15A-10a extends *both* to sales taxes paid to other states *and* to sales taxes paid to the subdivisions of other states. Accordingly, we affirm the circuit court's order.

## IV.

## CONCLUSION

For the foregoing reasons, the August 24, 2015, order of the Circuit Court of Kanawha County is hereby affirmed.

Affirmed.

23