**[J-5A-2023 and J-5B-2023] [MO: Todd, C.J.]**

**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| DIANE ZILKA, | : | No. 20 EAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | January 7, 2022, at No. 1063 CD |
| v. | : | 2019 affirming the Order entered on |
| | : | June 26, 2019, in the Court of |
| | : | Common Pleas, Philadelphia |
| TAX REVIEW BOARD CITY OF | : | County, Civil Division at Nos. 02438 |
| PHILADELPHIA, | : | and 02439, October Term 2018. |
| | : | |
| Appellee | : | ARGUED:  March 7, 2023 |
| DIANE ZILKA, | : | No. 21 EAP 2022 |
| | : | |
| Appellant | : | Appeal from the Order of |
| | : | Commonwealth Court entered on |
| | : | January 7, 2022, at No. 1064 CD |
| v. | : | 2019 affirming the Order entered on |
| | : | June 26, 2019, in the Court of |
| | : | Common Pleas, Philadelphia |
| TAX REVIEW BOARD CITY OF | : | County, Civil Division at Nos. 02438 |
| PHILADELPHIA, | : | and 02439, October Term 2018. |
| | : | |
| Appellee | : | ARGUED:  March 7, 2023 |

## DISSENTING OPINION

**JUSTICE DOUGHERTY**                          **DECIDED: NOVEMBER 22, 2023**

The Majority correctly recognizes "the crux of the dormant Commerce Clause is that a state may not tax a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State, nor may it impose a tax which discriminates against interstate commerce . . . to the burden of multiple taxation[.]"  Majority Opinion at 2 (internal quotation marks and citations omitted).  But, in my view, failing to aggregate

state and local taxes plainly results in discrimination against interstate commerce, so I must dissent.[1]

Like the Majority, I find *Comptroller of Treasury v. Wynne*, 575 U.S. 542 (2015) to be "instructive on the question of aggregation." Majority Opinion at 22. However, *Wynne* is not on all fours with the present scenario and thus is persuasive, but not controlling. The *Wynne* Court did not declare that state and local taxes must be aggregated for purposes of the dormant Commerce Clause. Taxpayer culled a few passages in *Wynne* to argue to the contrary. For example, prior to its analysis, the Court stated "[d]espite the names that Maryland has assigned to these taxes, both are State taxes, and both are collected by the State's Comptroller of the Treasury." *Wynne*, 575 U.S. at 546, *citing Frey v. Comptroller of Treasury*, 29 A.3d 475, 483, 492 (Md. 2011). The High Court also called the county portion of the Maryland tax "a so-called 'county' income tax[.]" *Id.* And the Court declared in a footnote that "it is immaterial that Maryland assigns different labels . . . to these taxes. In applying the dormant Commerce Clause, they must be considered as one." *Id.* at 564 n.8. However, these statements plainly indicate the *Wynne* Court did not consider the "county" tax to be a local tax and thus the Court could not conceivably have decided the issue we face in the present dispute. Indeed, even the footnoted quote taxpayer seizes upon specifically referenced Maryland, a state, to make the point that a state cannot simply label a state tax as a local tax to overcome the constitutional demands of the dormant Commerce Clause.[2]

---

[1] A tax violates the dormant Commerce Clause if it fails to do any of the following: (1) apply to an activity with a substantial nexus to the taxing state; (2) be fairly apportioned; (3) not discriminate against interstate commerce; and (4) be fairly related to the services provided by the state. *See Complete Auto Transit Inc. v. Brady*, 430 U.S. 274, 279 (1977).

[2] I also agree with the Majority that numerous other cases cited by taxpayer, including *Associated Industries*, *Philadelphia Eagles*, *Northwood Construction*, and *7-Eleven* do not resolve the federal issue as they do not discuss or decide whether state and local (continued…)

But certain portions of *Wynne* are particularly instructive here. The decision makes clear "that we must consider 'not the formal language of the tax statute but rather its practical effect.'" *Wynne,* 575 U.S. at 551, *quoting Complete Auto Transit Inc.*, 430 U.S. at 279. The practical effect of a tax, according to the *Wynne* Court, is "the economic impact of the tax." *Id.* at 552. This aligns with prior case law discussing how to determine whether a tax discriminates against interstate commerce.

A fundamental principle of dormant Commerce Clause jurisprudence is that no state may "impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business." *Boston Stock Exch. v. State Tax Comm'n*, 429 U.S. 318, 329 (1977) (internal citation and ellipses omitted). To determine whether a state tax is discriminatory, it "must be assessed in light of its actual effect considered in conjunction with other provisions of the State's tax scheme." *Maryland v. Louisiana*, 451 U.S. 725, 756 (1981). As such, "it is our duty to determine whether the statute under attack, whatever its name may be, will in its practical operation work discrimination against interstate commerce." *Id.*, *quoting Best & Co. v. Maxwell*, 311 U.S. 454, 455-56 (1940).

In order to determine the actual effect of the City's failure to provide taxpayer a credit for the remaining Delaware Income Tax (DIT) balance, we consider it "in conjunction with other provisions of the State's tax scheme[,]" *id.,* including the Pennsylvania Income Tax (PIT). First, we note "[s]tate taxes stand on a different basis from local levies" as state taxes "are essential to the very 'preservation' of the state itself[,]" while local taxes "are authorized or permitted by the state, not for its actual preservation, but merely to maintain the machinery of local government." *McClelland v.*

---

income taxes must be considered in the aggregate for purposes of a dormant Commerce Clause analysis. *See* Majority Opinion at 22.

*City of Pittsburgh*, 57 A.2d 846, 848 (Pa. 1948).  Notwithstanding this observation about the different **purposes** behind these taxes, the *McClelland* Court's explanation of the ultimate **authority** for all taxes imposed in this Commonwealth supports my position here:

> [t]he validity of [a] taxing ordinance does not depend upon whether the tax is regarded in a legal sense as a state or local tax.  All taxes in Pennsylvania levied by municipal and quasi municipal corporations must, of course, be authorized by the legislature.  In that sense, therefore, all may be considered state taxes.

*Id.* (emphasis omitted).[3]  *See also Allegheny Cnty. v. Commonwealth*, 534 A.2d 760, 766 (Pa. 1987) (Nix, C.J., dissenting) ("The majority ignores the fact that the county's taxing power is not separate and independent of the state's taxing power.  Rather, the authority to tax is a power of the state which is delegated by the state to the counties to be exercised by them in accordance with the terms of that delegation."), *citing Mastrangelo v. Buckley*, 250 A.2d 447 (Pa. 1969); *Fischer v. City of Pittsburgh*, 118 A.2d 157 (Pa. 1955); *Evans v. West Norriton Twp.*, 87 A.2d 474 (Pa. 1952); and *Wilson v. Sch. Dist. of Philadelphia*, 195 A. 90 (Pa. 1937).  This remains true today as Philadelphia, despite its Home Rule Charter, is unable to impose taxes unless granted the power by the Commonwealth's General Assembly.  *See* 53 P.S. §13133(a)(8).  Indeed, the state statute implementing the PIT, first enacted in 1971, contains a saving clause, specifically permitting Philadelphia to continue imposing its City Wage Tax, which was implemented in 1939;

---

[3] The Supreme Court of the United States has also made this same point:

> We think the following principles have been established by [prior decisions] and have become settled doctrines of this court, to be acted upon wherever they are applicable.  Municipal corporations are political subdivisions of the state, created as convenient agencies for exercising such of the governmental powers of the state as may be [e]ntrusted to them. . . . The number, nature, and duration of the powers conferred upon these corporations and the territory over which they shall be exercised rests in the absolute discretion of the state. . . . The power is in the state[.]

*Hunter v. City of Pittsburgh*, 207 U.S. 161, 178-79 (1907).

that tax would have otherwise been preempted by the Sterling Act, 53 P.S. §15971.[4]  *See* 72 P.S. §7359(a)-(b) (specifically permitting Pennsylvania political subdivisions to continue collecting income taxes regardless of the Sterling Act).  Furthermore, the saving clause was amended, beginning with tax year 1977, to limit the rate of the City Wage Tax imposed on nonresidents of Philadelphia.  *See id.* §7359(b)(1)-(2).  These legislative enactments prove the *McClelland* Court's point: for validity purposes, local taxes are considered state taxes.  *See McClelland*, 57 A.2d at 848.  The fact that the City Wage Tax was enacted by the City Council and is collected by the City's Department of Revenue are of no constitutional significance.

This view is supported by decisions from other jurisdictions.  These decisions discuss use and sales taxes, but *Wynne* made clear that a distinction between use and sales taxes and income taxes is not relevant in the constitutional analysis.  The *Wynne* Court stated as follows:

> The discarded distinction between taxes on gross receipts and net income was based on the notion, endorsed in some early cases, that a tax on gross receipts is an impermissible "direct and immediate burden" on interstate commerce, whereas a tax on net income is merely an "indirect and incidental" burden.  This arid distinction between direct and indirect burdens allowed "very little coherent, trustworthy guidance as to tax validity."  And so, beginning with Justice Stone's seminal opinion in *Western Live Stock v. Bureau of Revenue*, 303 U.S. 250 [ ] (1938), and continuing through [more recent cases], the direct-indirect burdens test was replaced with a more practical approach that looked to the economic impact of the tax.

---

[4] The Sterling Act provides the City "an enormously broad and sweeping power of taxation[,]" while "recogniz[ing] that the City cannot duplicate the Commonwealth's imposition of a tax[.]"  *Williams v. City of Philadelphia*, 188 A.3d 421, 429 (Pa. 2018) (internal citations omitted).

*Wynne*, 575 U.S. at 552 (internal citations omitted). Accordingly, I consider the following additional cases for their persuasive value.[5]

In *Arizona Department of Revenue v. Arizona Public Service Co.*, 934 P.2d 796 (Ariz. Ct. App. 1997), a public utility company located in Arizona bought coal from a mine in McKinley County, New Mexico and paid gross receipts taxes to McKinley County and New Mexico as well as excise and severance taxes to New Mexico. *See id.* at 798. Arizona assessed use taxes against the company for those purchases and the company claimed a credit for all taxes paid in New Mexico. *See id.* Arizona allowed a credit for the New Mexico gross receipts tax, but denied credit for the remaining taxes. *See id.* On appeal, the Arizona tax court reversed, granting the company credit for the McKinley County gross receipts tax, and the Arizona Court of Appeals affirmed. *See id.* at 798-99, 801. The court held the statutory exemption for taxes paid "under the laws of another state of the United States" included county taxes, explaining as follows:

> [Arizona] ignores the inherent relationship McKinley County necessarily
> shares with the state of New Mexico. Counties are state-created entities.

---

[5] The Majority would not rely on these decisions, and I certainly do not suggest they are binding. But they all stand for the proposition that a failure to aggregate state and local taxes results in a violation of the dormant Commerce Clause and, as such, their persuasive value is clear. *See, e.g.*, *League of Women Voters v. Commonwealth*, 178 A.3d 737, 803 (Pa. 2018) ("we may consider, as necessary, . . . any extra-jurisdictional case law from states[,] . . . which may be helpful and persuasive"); *Commonwealth v. Small*, 189 A.3d 961, 973 (Pa. 2018) (turning "to other jurisdictions for guidance"). *See also Obiter Dictum*, BLACK'S LAW DICTIONARY (11th ed. 2019) (explaining even *dicta* "may be considered persuasive"). In any event, and respectfully, the Majority does not present support for its opposite conclusion, instead relying on *Wynne* to state "the Court's logic and characterization of the county tax as a state tax based on the circumstances underlying its creation and the manner of its collection via the state's comptroller reveal that state and local taxes need not be aggregated for purposes of a dormant Commerce Clause analysis[.]" Majority Opinion at 22-23. As I have explained, *Wynne* is persuasive, but it does not control this matter. *See supra*; *see also* Concurring Opinion (Wecht, J.) at 10-11 ("the *Wynne* Court itself did not focus its analysis on Maryland's aggregate state and local tax burden") (emphasis omitted). Its reasoning, however, clearly supports my conclusion and cuts against the conclusion of the Majority.

> Counties have only the powers that a state gives them. Counties draw their taxing authority from the state constitution.
>
> The derivative relationship between a state and its counties means that when a county imposes a tax, it does so pursuant to a delegation of state tax authority. McKinley County is no exception. Its tax was imposed under the laws of New Mexico because that state's enabling statutes created its taxing power. Given this relationship, the word "under" is not ambiguous.
>
> Furthermore, and contrary to our analysis above, if we agreed with [Arizona] that the term "under" refers only to a state tax, the outcome would raise a constitutional problem. The Commerce Clause of the United States Constitution forbids discrimination against interstate commerce. A state may not subject a transaction to a greater tax when it crosses state lines than when it occurs entirely intrastate.

*Id.* at 799 (internal citations omitted). The court of appeals thus declined to read the exemption as providing credits for other state taxes (but not county taxes) as such an interpretation "would pose serious constitutional problems[.]" *Id.*

The Supreme Court of Colorado reached a similar result in *General Motors Corp. v. City & County of Denver*, 990 P.2d 59 (Colo. 1999). In that case, the City and County of Denver imposed a use tax on vehicles that were purchased in Michigan, passed through an emissions testing lab run by General Motors in Denver, and sold in Michigan. *See id.* at 64. Denver provided a credit for sales or use taxes paid "to other municipalities on the materials costs of the vehicles prior to the vehicles' arrival in Denver[,]" and General Motors sought credit for taxes paid to other states as well. *Id.* at 64-65 (emphasis omitted). The court held a provision of Denver's tax code that provides an exemption for "sales which the city is prohibited from taxing under the Constitution or laws of the United States" prevented it "from invalidating the use tax in its entirety[,]" but the court also held Denver's tax structure discriminated against interstate commerce by only "credit[ing] taxes paid to other municipalities." *Id.* at 70 (internal citation omitted). The court

concluded that, pursuant to the dormant Commerce Clause, General Motors was entitled to credits for taxes paid to other states and municipalities.  *See id.* at 71.

The Supreme Court of Appeals of West Virginia also tackled this issue.  In *Matkovich v. CSX Transp. Inc.,* 793 S.E.2d 888 (W. Va. 2016), CSX, a railroad company, was directed to pay the West Virginia Motor Fuel Use Tax on the fuel it buys in other jurisdictions and uses in West Virginia.  *See id.* at 891.  While West Virginia afforded a tax credit for sales taxes on fuel paid to other states, CSX also sought credit for sales taxes on fuel paid to cities, counties, and localities of other states.  *See id.*  The Office of Tax Appeals granted CSX's petition for refund, determining CSX was entitled to the credit it sought.  *See id.* at 892.  Eventually the West Virginia Tax Commissioner's appeals reached the state's supreme court, and, relying on *Wynne*, *General Motors*, and *Arizona Public Service*, that court affirmed.  *See id.* at 896-98.  The supreme court determined the tax credit must "extend[ ] both to sales taxes CSX has paid to other states on its purchases of motor fuel therein and to sales taxes that CSX has paid to the subdivisions of other states when it has purchased motor fuel in such locales[,]" and that "[a]ny other construction of this statute would invariably violate the Commerce Clause's prohibition on subjecting interstate transactions to a greater tax burden than that imposed on strictly intrastate dealings."  *Id.* at 897 (emphasis omitted).  "[B]ecause disallowance of the sales tax credit for sales taxes imposed by the subdivisions of other states would produce a 'total tax burden on interstate commerce [that] is higher' than a purely intrastate transaction," the Court held any other construction of the statute would "be violative of the dormant Commerce Clause."  *Id.* at 898, *quoting Wynne*, 575 U.S. at 567.

Based on all the above, I would hold for purposes of a dormant Commerce Clause analysis, the City Wage Tax, and the City's crediting system, must be considered as part

of the Commonwealth's income tax scheme. [6]  Otherwise, its economic impact cannot be assessed "in light of its actual effect considered in conjunction with other provisions of the State's tax scheme."  *Maryland v. Louisiana*, 451 U.S. at 756.  When PIT and the City Wage Tax are considered together in this way, it becomes clear that the City's failure to grant taxpayer's refund petition unconstitutionally discriminated against interstate commerce.  The tables below further illustrate this discriminatory effect.[7]

---

[6] Justice Wecht acknowledges there must be "some form of state-level aggregation" as otherwise "a state potentially could avoid providing full credits to its residents for taxes paid to other states on income earned in the other states by authorizing cities or political subdivisions to impose a portion of the tax directly."  Concurring Opinion (Wecht, J.) at 12-13.  We agree that "allowing the result in any one case to hinge on whether a given tax is labeled state, local, county, city, or non-resident is . . . unworkable[.]"  *Id.* at 13.  We disagree, however, that we must permit the continuation of this unworkable (and unconstitutional) practice simply because the United States Supreme Court has yet to confront the issue.

[7] These tables use approximate tax rates.

**Table 1: Current Tax Structure Denying Additional DIT Credit**

| | Working in Philadelphia | Working in Wilmington |
|---|---|---|
| | | |
| City Wage Tax Rate | 4.00% | 4.00% |
| PIT Rate | 3.00% | 3.00% |
| Wilmington Tax Rate | N/A | 1.25% |
| DIT Rate | N/A | 5.00% |
| Total Tax Rate Before Credits | 7.00% | 13.25% |
| Less PIT Credit | N/A | (3.00%) |
| Less City Wage Tax Credit | N/A | (1.25%) |
| Total Tax Rate After Credits | 7.00% | 9.00% |

**Table 2: Tax Structure if Additional DIT Credit is Allowed**

| | Working in Philadelphia | Working in Wilmington |
|---|---|---|
| | | |
| City Wage Tax Rate | 4.00% | 4.00% |
| PIT Rate | 3.00% | 3.00% |
| Wilmington Tax Rate | N/A | 1.25% |
| DIT Rate | N/A | 5.00% |
| Total Tax Rate Before Credits | 7.00% | 13.25% |
| Less PIT Credit | N/A | (3.00%) |
| Less City Wage Tax Credit | N/A | (1.25% + 2.00% DIT = 3.25%) |
| Total Tax Rate After Credits | 7.00% | 7.00% |

The tables reflect how disallowing the credit at issue here causes those living in the City and working in Wilmington to have their income taxed at a rate two percent higher

than those who live and work in the City. The City's practice of allowing a credit only for taxes paid to other municipalities results in the total tax burden being higher on City residents engaged in interstate commerce, *i.e.*, those who choose to work in Wilmington, than City residents who choose to work in the City. Stated another way, the City's practice of disallowing a credit for additional non-credited state taxes discriminates against interstate commerce by providing a direct commercial advantage to those who live and work in Philadelphia; it thus violates the dormant Commerce Clause. *See Wynne*, 575 U.S. at 549-50 (dormant Commerce Clause "precludes States from discriminating between transactions on the basis of some interstate element," including "tax[ing] a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the State" or "impos[ing] a tax which discriminates against interstate commerce either by providing a direct commercial advantage to local business, or by subjecting interstate commerce to the burden of multiple taxation.") (internal quotation marks, brackets, and citations omitted).[8]

---

[8] It appears the Majority is reluctant to mandate aggregation of state and local taxes in a dormant Commerce Clause analysis before the U.S. Supreme Court itself does so. *See* Majority Opinion at 26 (out-of-jurisdiction case law "provides a poor basis on which for our Court to declare, **for the first time**, that state and local level taxes are one and the same for purposes of the Commerce Clause") (emphasis added); Concurring Opinion (Wecht, J.) at 13 ("I believe that the task of modifying [the dormant Commerce Clause] doctrine (if at all) should be left for the Court that invented it in the first place."). Generally speaking, I agree this Court "should proceed cautiously when asked to be the engine of innovation in federal constitutional law, since mistaken predictive judgments can be disruptive of Pennsylvania law and can cause substantial injustice where the predictive judgments are erroneous." *Commonwealth v. Molina*, 104 A.3d 430, 458 (Pa. 2014) (Opinion Announcing the Judgment of the Court) (Castille, C.J., dissenting). Nevertheless, the question of aggregation is now squarely before this Court and we must answer it consistent with the Constitution of the United States and related case law. *See Burt v. Titlow*, 571 U.S. 12, 19 (2013) ("state courts have the solemn responsibility equally with the federal courts to safeguard constitutional rights") (internal citation omitted). In so doing, we merely interpret and "implement the federal command up to its limits, but no farther." *Commonwealth v. Sanchez*, 82 A.3d 943, 994 (Pa. 2013) (Castille, C.J., concurring). And "[f]ederal review is always available to correct errors" in our (continued…)

Justice Mundy joins this dissenting opinion.

---

interpretation. *Id.* It may well be this case is worthy of *certiorari* so that the Court can provide further guidance with respect to its dormant Commerce Clause jurisprudence.